[Civ. No. 9592. Third Dist. Dec. 31, 1959.]

POMPEII BACCIGLIERI, Appellant, v. CHARLES C. MEEK MILLING COMPANY (a Corporation) et al., Respondents.

Andrew J. Eyman and George G. Olshausen for Appellant.

Connolly & Farbstein and Theodore Tamba for Respondents.

PEEK, J.—This is an appeal by plaintiff from a judgment entered pursuant to a jury verdict in favor of defendants in an action for personal injuries.

On the date of the accident in question plaintiff, who was a partner in a trucking business, had driven to defendants' lumberyard near Redding to pick up a load of lumber. He was driving a tractor to which were attached two trailers. The defendant Ledford was a night watchman and fork lift operator for the lumber company. Plaintiff and Ledford were the only two persons present in the yard at the time of the accident. The lumber which plaintiff was to pick up was in units approximately four feet high, and each unit was kept intact by steel straps or bands. The procedure followed in loading was for Ledford to pick up a unit on the fork lift and for plaintiff, from his position on the trailer, to direct the placing of the unit on the trailer. Four units had been placed on the rear trailer. The accident involved the fifth, or last, unit which had been placed on top of the others. The primary dispute centers on what was being done with this unit when the accident happened. It was plaintiff's testimony that the lumber in the fifth unit was askew or "ragged" and would have been a hazard if placed at the bottom of the load. He also testified that he was on top of the load when this unit was put in place. After the unit was first hoisted, Ledford again moved it approximately 10 to 12 inches to center it on the load in accordance with signals from the plaintiff. Following measurement of the load, it was decided that it was too high. Plaintiff further stated that he may have told Ledford that the unit had to be split. He denied having cut the band around the unit but remembered nothing after it "exploded." According to Ledford, plaintiff

had stated he would split the bundle on top and band it there in two bundles, thus lowering the load. Ledford said that plaintiff obtained the mill's banding tools and cutters and cut the metal band around the unit. At that point the accident occurred. The load came apart and plaintiff was thrown to the ground and injured by falling lumber. The evidence was conflicting concerning the position of the fork lift; that is, whether it was against the load or some distance away. One Donald Jones, the mill manager, testified that when he arrived at the yard about 7 o'clock that evening he noticed the lumber on both sides of the truck with substantially more on one side than the other. The hoist was some 10 or 15 feet from the truck and about in the center of the trailer with the level of the forks at approximately the top of the four units. He also noticed that the band was hanging down at one side. He pulled it out and, following an examination, determined that it had been cut. He stated that it was clean-cut and showed teeth marks which the cutters used at the mill always left when bands were cut. He found two of the banding tools at the back of the truck and the cutting tool buried under the lumber at one side of the truck. He further testified that he had never seen a band broken, and that it appeared to him that the band had been cut. It was also Jones' testimony that if a band were broken, a unit of green lumber would, in effect, "explode." He also testified that all but one of the units were green lumber, but he did not know if the fifth was green or dry. It was plaintiff's theory that the fork lift had been so negligently operated as to cause the band to break, or that the band had broken either from defects therein or from improper banding of the unit. Defendants claimed plaintiff had cut the band.

The chief assignment of error is that the "court committed prejudicial error in eliminating proximate cause from assumption of risk." The court had defined proximate cause in its instructions on negligence and contributory negligence. It had also instructed the jury on the defense of assumption of risk. Plaintiff does not attack the propriety of these instructions but centers his argument upon the following instruction: "Your attention is called to a distinction between contributory negligence and assumption of risk. As said elsewhere in these instructions, an essential factor in contributory negligence is that it be a proximate cause of the injury of which a person thereafter complains. But assumption of risk, if it meets with the requirements of the law as

stated to you, will bar recovery for damage although it plays no part in causing the accident except merely to expose the person to the danger." As to this instruction, plaintiff says: "By contrasting assumption of risk with the proximate cause rule of contributory negligence, this instruction implies, if it does not state, that proximate cause plays no part in assumption of risk. In view of the fact that *more than one risk* is involved in the present case, this instruction was prejudicial error."

If the criticized instruction can be said to have eliminated proximate cause from assumption of risk, the court was quite correct in doing so. Proximate cause finds its operation in the field of negligence and is a limiting factor therein which so operates that even if injury is caused by negligence, liability will not follow unless that negligence can meet the test of the legal concept of proximate or legal cause. " 'Proximate cause,' or 'legal cause,' is the name given to the limitation which the courts have been compelled to place, as a practical necessity, upon the actor's responsibility for the consequences of his conduct. The limitation is nearly always a matter of various considerations of policy which have nothing to do with the fact of causation." (Prosser on Torts, 2d ed., p. 252, § 47.) On the other hand, if a jury finds that a plaintiff has assumed a certain risk and that his damages resulted from the risk assumed, they must deny recovery and need not concern themselves with the concept of proximate cause. It was proper for the trial court to point this out to the jury.

In developing his theory of prejudicial error from the giving of the criticized instruction plaintiff says: "As already shown, there was the risk of the fork-lift operations on the lumber; there was also the risk of improper binding or a defective strap . . . *But under the quoted instruction, the jury was compelled to find for defendant if they found plaintiff had assumed the risks of the forklift operation,* even though the accident resulted from improper binding or a defective strap *when the forklift was nowhere in contact with the lumber."* We think that no such construction can be placed on the instruction given. The jury had been told by the instructions on assumption of risk that such assumption would bar recovery of damages caused by the risk assumed. The jury could not have understood that if they found the plaintiff had assumed the risk of the fork lift

operation he would be barred from recovery of damage caused by a defective strap, the risk of which he had not assumed.

■ Plaintiff contends that the court erred in instructing the jury that recovery was not subject to income taxes. We think the court might, with propriety, have refused the instruction as unnecessary. But appellant suffered no injury. The jury found for the defendants and consequently cannot be assumed to have considered damages.

■ Plaintiff contends the court committed prejudicial error in allowing defendants' manager Jones to give in evidence his opinion that the band around the lumber bundle had been cut. Plaintiff asserts the issue, that is, whether the band had been cut or had broken, was not a proper subject of expert testimony, citing *Moore* v. *Norwood*, 41 Cal.App.2d 359 [106 P.2d 939], and *Grunwald* v. *Freese*, 4 Cal.Unrep. 182 [34 P. 73].

The witness said he had examined the band and observed that ''the band was separated at an angle straight, clean cut, and it showed teeth marks which the cutters that were used at the mill always showed when the band was cut. Therefore, the only thing I could assume was that it was cut.'' Over objection the court ruled ''. . . it is an opinion which the jury may weigh.'' The ruling was correct. The opinion was based upon the knowledge of the witness of the marks he had seen left by the cutter teeth when a band was cut. This knowledge, possessed by him but not by the jury, qualified him to give an opinion that the mill cutters had been used to cut the band.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied January 25, 1960, and appellant's petition for a hearing by the Supreme Court was denied February 24, 1960. Peters, J., was of the opinion that the petition should be granted.