133 Cal.App.3d 565 (1982)
184 Cal. Rptr. 87
ROSALINE H. FOX et al., Plaintiffs and Appellants,
v.
PACIFIC SOUTHWEST AIRLINES, Defendant and Appellant.
Docket No. 22790.
Court of Appeals of California, Fourth District, Division One.
July 6, 1982.
*567 COUNSEL
Edgar Simon, Mace Stephen Simon and Leonard Sacks for Plaintiffs and Appellants.
Kern, Wooley & Maloney and Ralph S. LaMontagne, Jr., for Defendant and Appellant.
OPINION
COLOGNE, Acting P.J.
Following a denial of their motion for a new trial, Pacific Southwest Airlines appeals a judgment in a wrongful death action in which the jury awarded $152,076 to Mr. and Mrs. Jerome Fox, the parents and heirs of Gary Fox who was killed in the September 25, 1978, commercial jet-small plane collision and crash in *568 San Diego, California. PSA did not contest liability so the sole issue was the amount of damages to reasonably compensate Mr. and Mrs. Fox for their loss. The Foxes cross-appeal on the single issue of prejudgment interest.
The evidence revealed Gary Fox was a young man of exceptional quality. He graduated summa cum laude from the University of California at Los Angeles as a member of Phi Beta Kappa and was selected to the "Dean's List" eight times. When he was killed at age 25, Gary was in his senior year of medical school and desired to specialize in pediatrics. His parents, brother, fiancee, high school gymnastics coach, and others related to his academic pursuits testified Gary was industrious, sensitive, generous and affectionate. Gary established a close relationship with his peers as well as his family. In appreciation of his parents' financial and moral support throughout college and medical school,[1] Gary on several occasions expressed to his parents a willingness to help support them in the future if he was able and they were in need, especially if they had medical needs. Although Gary's promise to support was general rather than specific and his mother and father were in good health at their respective ages of 52 and 55, and his parents had never depended on Gary for financial support, this promise was indicative of Gary's character and the cohesiveness of the Fox family.
PSA raises several issues, some of which are related to the court's pretrial rulings. (1) PSA first contends the court erred by failing to instruct the jury the damages to be awarded must be reduced to present value and by failing to permit PSA to introduce expert testimony on the proper discount rate to be used in making a present value calculation.
At the outset, we should note PSA requested in its pretrial statement that BAJI No. 14.70[2] be given. The court refused this request, believing present cash value is inapplicable in a wrongful death action. However, the "Use Note" under BAJI No. 14.70 states: "This instruction should *569 be used in every instance where a future pecuniary loss is involved." Thus, the question becomes whether Mr. and Mrs. Fox suffered a future pecuniary loss.
Throughout the development of wrongful death law in California, courts have permitted recovery of plaintiff's lost present and future economic support as well as the pecuniary (as opposed to sentimental) value of such factors as lost comfort, society, companionship, care and protection (Krouse v. Graham (1977) 19 Cal.3d 59, 67-69 [137 Cal. Rptr. 863, 562 P.2d 1022], citing cases such as Bond v. United Railroads (1911) 159 Cal. 270, 285-286 [113 P. 366], and Ure v. Maggio Bros. Co., Inc. (1938) 24 Cal. App.2d 490, 496 [75 P.2d 534]).
Without altering the century-long line of cases which firmly establish it is the pecuniary value of lost society, comfort, companionship, care and protection which may be recovered in a wrongful death action, the California Supreme Court labeled these damages as "nonpecuniary" because they do not have "an ascertainable economic value" (Krouse v. Graham, supra, 19 Cal.3d 59, 68-69). Notwithstanding this semantic label, damages for lost value of: (1) economic contributions; (2) personal service, advice or training that would probably have been given; and (3) society, comfort, care, protection and companionship must be monetarily quantified. (See Vecchione v. Carlin (1980) 111 Cal. App.3d 351, 357-358 [168 Cal. Rptr. 571]; accord Allen v. Toledo (1980) 109 Cal. App.3d 415, 423 [167 Cal. Rptr. 270]; Grimshaw v. Ford Motor Co. (1981) 119 Cal. App.3d 757, 826 and fn. 20 [174 Cal. Rptr. 348].) Thus, the rule remains and we hold damages for wrongful death must be reduced to present value.[3]
Finally on this issue, we observe a modified BAJI No. 14.51 was given.[4] This instruction, as unmodified, correctly states the law as follows: "If you return a verdict against the defendant, it shall be in a single sum, representing the aggregate of the present cash value of the *570 loss suffered by the heirs of the deceased." (Italics added.) Clearly, wrongful death damages are measured over a future time period (see Mize v. Atchison, T. & S.F. Ry. Co. (1975) 46 Cal. App.3d 436, 453 [120 Cal. Rptr. 787]), and therefore, recovery for lost future benefits must be discounted to present value (see Bond v. United Railroads, supra, 159 Cal. 270, 285; Emery v. Southern Cal. Gas Co. (1946) 72 Cal. App.2d 821, 824 [165 P.2d 695]; Johns, California Damages (2d ed. 1977) § 5.31, p. 253).
Applying this well established law, we hold it was prejudicial error for the court to refuse to admit evidence of present value rates and to fail to give a corresponding instruction. Because the aggregate award included lost future benefits, and because the erroneous instructions as given were likely to mislead the jury in formulating the award of damages, we must reverse[5] (Krouse v. Graham, supra, 19 Cal.3d 59, 72).
We next address other issues raised on appeal which may face the trial court on remand. (2) PSA contends the court erred in failing to instruct the jury that wrongful death awards are not taxable. It is true damages in a wrongful death action are not subject to state or federal income taxes. No California case, however, has held it was error to refuse to give such instruction.
In Helfend v. Southern Cal. Rapid Transit Dist. (1970) 2 Cal.3d 1, 12 [84 Cal. Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398], the California Supreme Court stated, "generally the jury is not informed that plaintiff's attorney will receive a large portion of the plaintiff's recovery in contingent fees or that personal injury damages are not taxable to the plaintiff and are normally deductible by the defendant." The court further stated it would "leave open the proper treatment of the tax consequences of tort verdicts" because neither party briefed nor argued the point (ibid., fn. 18).
*571 The California appellate courts have consistently held it is not error to refuse to instruct that damages are nontaxable (e.g., Mackey v. Campbell Construction Co. (1980) 101 Cal. App.3d 774, 789 [161 Cal. Rptr. 64]; Henninger v. Southern Pacific Co. (1967) 250 Cal. App.2d 872, 878-880 [59 Cal. Rptr. 76]; cf. Bacciglieri v. Charles C. Meek Milling Co. (1959) 176 Cal. App.2d 822, 826 [1 Cal. Rptr. 706]). We believe the rule in California is "even though it would have been proper to give the proffered instruction, it was not reversible error to fail to do so" (Atherley v. MacDonald, Young & Nelson (1956) 142 Cal. App.2d 575, 589 [298 P.2d 700]). Because the "income tax" instruction may be confusing or unnecessary, it is within the discretion of the trial court to give or reject this instruction.
(3) PSA next contends the court erred in refusing to permit PSA to introduce evidence of Mr. and Mrs. Fox' financial condition at the time of Gary's death.
PSA concedes "It is ... the general rule that in a wrongful death action evidence of the heir['s] wealth or poverty is inadmissible." (Webb v. Van Noort (1966) 239 Cal. App.2d 472, 479 [48 Cal. Rptr. 823, 29 A.L.R.3d 781]; and see McLaughlin v. United Railroads (1915) 169 Cal. 494, 498 [147 P. 149]). This rule is based on sound policy because such evidence has little logical relevancy, is highly prejudicial, and if admitted, would permit the defendant who wrongfully caused the death of another to fortuitously benefit and receive a windfall because of the plaintiff-heir's financial well-being. (See Johnson v. Western Air Exp. Corp. (1941) 45 Cal. App.2d 614, 622 [114 P.2d 688]; Cherrigan v. City etc. of San Francisco (1968) 262 Cal. App.2d 643, 650-652 [69 Cal. Rptr. 42].)
PSA contends the normal rule of inadmissibility of plaintiff's financial condition should not apply because Mr. and Mrs. Fox put the matter in issue. The testimony of Mrs. Fox was that her son told her he would take care of her health needs once he got his medical degree. She also testified he told her, "if I can ever be of any help to you, you can count on me." While the latter statement was made following her suggestion, "if anything happens to [Mr. Fox] I might have to call on you because I'm not skilled in any way.... I don't have a career ...," neither statement was premised necessarily on financial help. Just five days before this tragedy, Gary and Mrs. Fox exchanged their views on the desirability of each not having to ask the other for money in the future. Another possible reference to financial help was this question of *572 Mrs. Fox on cross-examination: Q. "But what I have reference to is that there was a discussion just after he [the decedent] got admitted to medical school, but before he went back there, to the effect that so far as future support might be concerned, that if the need ever arose for you and your husband, and if he were able to respond, that he would do what he could?
A. "That's true."
Without more, it is highly speculative exactly what sort of financial support these kinds of statements would entail. They are vague and conditional. The Foxes offered no other evidence to establish Gary's offer as having any monetary value. At best the statements suggest only gratitude, love and affection of a son "indebted" for the investment his parents were making in his education. This should not open the door to admit evidence of the parents' financial condition contrary to the established general rule. The trial court was well within its discretion under Evidence Code section 352 to exclude this evidence.
PSA finally contends the award of $152,076 was excessive as a matter of law. Our decision to reverse on other grounds obviates the need for discussion of this issue, but we suggest it does not appear to be the product of passion, prejudice, or corruption.
The final issue concerns Mr. and Mrs. Fox' cross-appeal. Citing Civil Code section 3288, the Foxes contend the court erred in refusing to submit the issue of prejudgment interest to the jury.[6] Both parties rely on Greater Westchester Homeowners Assn. v. City of Los Angeles (1979) 26 Cal.3d 86 [160 Cal. Rptr. 733, 603 P.2d 1329], as controlling authority.
In Greater Westchester, supra, the court reversed an improper award of prejudgment interest under section 3288 for the personal injuries and emotional distress sustained because of airport noise (26 Cal.3d 86, 102). The court stated at pages 102 and 103: "We have recently affirmed that, unlike Civil Code section 3287, which relates to liquidated and contractual claims, section 3288 permits discretionary prejudgment interest for unliquidated tort claims. (Bullis v. Security Pac. Nat. Bank *573 (1978) 21 Cal.3d 801, 814-815....) In Bullis, we characterized prejudgment interest as `awarded to compensate a party for the loss of his or her property.' (Id., at p. 815, italics added; ....) The award of such interest represents the accretion of wealth which money or particular property could have produced during a period of loss. Using recognized and established techniques a fact finder can usually compute with fair accuracy the interest on a specific sum of money, or on property subject to specific valuation. Furthermore, the date of loss of the property is usually ascertainable, thus permitting an accurate interest computation. (Bullis, supra, at p. 815.)
"However, damages for the intangible, noneconomic aspects of mental and emotional injury are of a different nature. They are inherently nonpecuniary, unliquidated and not readily subject to precise calculation. The amount of such damages is necessarily left to the subjective discretion of the trier of fact. Retroactive interest on such damages adds uncertain conjecture to speculation. ..."
".... .... .... ...
".... No California courts have previously extended section 3288 to general damages for personal injury, and the prevailing common law view in other jurisdictions appears to be that prejudgment interest is inappropriate in such cases. (See authorities collected in 22 Am.Jur.2d (1965) Damages, § 191, p. 269, fn. 8.)" (Italics added.)
(4) Thus, Greater Westchester confirms the purpose of prejudgment interest is to compensate a party for lost property. (See also Big Bear Properties, Inc. v. Gherman (1979) 95 Cal. App.3d 908, 914 [157 Cal. Rptr. 443].) Absent oppression, fraud, or malice, prejudgment interest should not be awarded in a wrongful death action (Southern Pac. Transportation Co. v. State of California (1981) 115 Cal. App.3d 116, 122 [171 Cal. Rptr. 187]). This rule is appropriate because wrongful death damages neither involve lost property nor are they readily ascertainable without a judicial determination based upon conflicting evidence. (See Levy-Zentner Co. v. Southern Pac. Transportation Co. (1977) 74 Cal. App.3d 762, 795-799 [142 Cal. Rptr. 1] [applying § 3287, subd. (a), in property damage tort case]; cf. Esgro Central, Inc. v. General Ins. Co. (1971) 20 Cal. App.3d 1054, 1060-1063 [98 Cal. Rptr. 153] [construing § 3287 in a contract context].)
*574 Applying these rules, we hold the trial court properly denied Mr. and Mrs. Fox' request to submit the prejudgment interest issue to the jury.
Judgment reversed.
Staniforth, J., and Work, J., concurred.
NOTES
[1] Gary's three-year medical school program cost his parents between $10,000 and $12,000 a year.
[2] BAJI No. 14.70 reads: "Any [award for] [finding of] future pecuniary loss must be only for its present cash value.

"Present cash value is the present sum of money which, together with the investment return thereon when invested so as to yield the highest rate of return consistent with reasonable security, will pay the equivalent of lost future benefits at the times, in the amounts, for the period that you find such future benefits would have been received.
"The present cash value will, of course, be less than the amount you find to be the loss of such future benefits."
[3] This rule is consistent with the Restatement Second of Torts, section 913A, which states: "The measure of a lump-sum award for future pecuniary losses arising from a tort is the present worth of the full amount of the loss of what would have been received at the later time."

The comment to this section explains in part: "If damages are awarded for losses that will be incurred in the future, it would be over-compensation to give at the present time in cash their full amount. They should be reduced to their present worth, since they are being paid in advance."
[4] This instruction read: "The verdict shall be in a single sum, representing the aggregate of the loss suffered by the heirs of the deceased."
[5] Contrary to the Foxes' assertion, the issues concerning an instruction on present value and the admissibility of PSA's expert testimony concerning an appropriate discount rate were preserved below as there was a sufficient request and a direct ruling in a pretrial conference order.

Also, to aid the posture of the parties on remand, we note the Foxes may present evidence of future inflation rates which may partially offset the effect of present value discounting (see Rodriguez v. McDonnell Douglas Corp. (1978) 87 Cal. App.3d 626, 662 [151 Cal. Rptr. 399]; Gall v. Union Ice Company (1951) 108 Cal. App.2d 303, 320 [239 P.2d 48]; Holder v. Key System (1948) 88 Cal. App.2d 925, 940 [200 P.2d 98]; Johns, California Damages, supra, § 5.29, p. 251).
[6] Civil Code section 3288 reads: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."