982 F.2d 1271
 In re AIR CRASH DISASTER NEAR CERRITOS, CALIFORNIA, ON
AUGUST 31, 1986.
Mary GUZMAN; Lorraine Ayala, Alex Guzman; Sandra
Moldonado; and Reann Guzman, a minor, by and
through her Guardian ad Litem, Pauline
Valenzuela, Plaintiffs-Appellees,
v.
AERONAVES DE MEXICO, S.A., dba Aeromexico, Defendant,
and
United States of America, Defendant-Appellant.
In re AIR CRASH DISASTER NEAR CERRITOS, CALIFORNIA, ON
AUGUST 31, 1986.
Marcy HUERTA; John Daniel Huerta; Martin David Huerta;
Johnna Danette Huerta, Plaintiffs-Appellees,
v.
AERONAVES DE MEXICO, S.A., dba Aeromexico, Defendant,
and
United States of America, Defendant-Appellant.
In re AIR CRASH DISASTER NEAR CERRITOS, CALIFORNIA, ON
AUGUST 31, 1986.
April Renee BASYE, a minor, by her Guardian ad Litem,
Barbara BASYE; Barbara Basye; Tracy Lynn Basye;
and Michael Anthony Basye, Plaintiffs-Appellees,
v.
AERONAVES DE MEXICO, S.A., dba Aeromexico, Defendant,
and
United States of America, Defendant-Appellant.
In re AIR CRASH DISASTER NEAR CERRITOS, CALIFORNIA, ON
AUGUST 31, 1986.
Virginia GUZMAN; Susan Harbour; Manuel Guzman, Jr.; Steven
Guzman, Plaintiffs-Appellees,
v.
AERONAVES DE MEXICO, S.A., dba Aeromexico, Defendant,
and
United States of America, Defendant-Appellant.
 Nos. 90-55808, 90-56149, 90-56155 and 90-56158.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 8, 1992.
Decided Dec. 10, 1992.
 
 Marianne Finnerty, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.
 James J. McCarthy, Magana, Cathcart, McCarthy & Pierry, Los Angeles, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: POOLE, WIGGINS, and LEAVY, Circuit Judges.
 LEAVY, Circuit Judge:
 
 
 1
 These are consolidated appeals from the district court's damages awards to the heirs of five passengers killed on August 31, 1986, when an Aeromexico plane collided over Cerritos, California, with a small private aircraft operated by William Kramer. Following the initial determination by the district court in a multidistrict proceeding that the United States and William Kramer were each 50% liable for the crash, the heirs proceeded separately to litigate damages. The order regarding liability is the subject of an interlocutory appeal pending before this court. Damages for five of the deceased passengers were determined in separate damage trials and the government is appealing those awards in this case. We have jurisdiction under 28 U.S.C. § 1291.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Immediately following the crash, pursuant to its obligation under the Warsaw Convention, Aeromexico paid $75,000 to the heirs of each deceased passenger. See Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C.App. § 1502, as supplemented by the Montreal Agreement. Aeromexico also paid the funeral expenses to the families of the passengers.
 
 
 3
 The heirs of the deceased passengers filed actions against Aeromexico, the Estate of William Kramer, and the United States. The various actions were transferred to the Central District of California for consolidated proceedings before Judge David M. Kenyon. These appeals were a part of Multidistrict Litigation 717 ("MDL 717"). The claims against the United States were brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. The heirs alleged that the United States was negligent for failing to detect the private aircraft's intrusion into restricted airspace and failing to give a traffic advisory to Aeromexico Flight No. 498.
 
 
 4
 In a 1989 trial on liability before Judge Kenyon, the district court concluded that the Government and Kramer were each 50% liable for the accident.[1] Aeromexico was found not liable beyond its obligation under the Warsaw Convention. Aeromexico has paid $375,000 to these plaintiffs, which represented $75,000 for each death in these four cases.[2]
 
 
 5
 As part of MDL 717, Judge Kenyon ruled that the Warsaw payments were not a collateral source and, therefore, the Estate of Kramer and the United States were entitled to offset those payments. In the same order, in response to Aeromexico's motion for partial summary judgment, the court held that the defendants United States and the Estate of Kramer were jointly and severally liable for reimbursement of the monies paid to the plaintiffs by Aeromexico under theories of both equitable indemnity and direct liability. None of the parties to that order--the government, the Estate of Kramer, the heirs, or Aeromexico--have appealed from that order.
 
 
 6
 A bench trial was then held before Judge Manuel L. Real to determine the damages to be awarded in each of these four cases. Both economic and noneconomic damages were awarded.[3] As part of the damages, the court awarded funeral and burial expenses to the plaintiffs, against the United States and the Estate of Kramer. Aeromexico had previously paid the funeral expenses and is seeking contribution from the United States. Finally, pursuant to Judge Kenyon's earlier order, Judge Real determined that the United States and the Estate of Kramer would each be entitled to offset a portion of the damages because of the reimbursement owed to Aeromexico for its payment under the Warsaw Convention. Accordingly, the district court reduced the judgments against the United States by $37,500 in each of the five wrongful death awards. The Government filed a timely appeal from these consolidated judgments and it challenges some of the damages awarded by the district court and the distribution of the offset amounts.
 
 STANDARD OF REVIEW
 
 7
 Generally, this court reviews the district court's damages award under the FTCA for clear error. Shaw v. United States, 741 F.2d 1202, 1205 (9th Cir.1984). When a legal determination such as the proper elements of an award of damages is reviewed, a de novo standard is applied. Felder v. United States, 543 F.2d 657, 663 (9th Cir.1976).
 
 DISCUSSION
 A. Offset for Indemnification to Aeromexico
 
 8
 The United States contends the district court erred when it determined that the government was entitled to only a 50% credit ($37,500) because of its obligation to indemnify Aeromexico for the $75,000 Warsaw Convention payment. Because the United States and the Estate of Kramer have joint and several liability to Aeromexico for the Warsaw payments, the government asserts that it is entitled to offset the entire amount since it is the only solvent defendant and, thus, will be forced to pay Aeromexico 100% ($75,000) of the Warsaw payment. Also, according to the government, the plaintiffs will receive double payment to the extent of 50%, or $37,500, that as a practical matter will not be offset in favor of the Estate of Kramer.
 
 
 9
 Section 2674 of the FTCA provides in relevant part that: "[t]he United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674; Taylor v. United States, 821 F.2d 1428, 1430 (9th Cir.1987), cert. denied, 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988). Liability is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); id. Because the negligent act occurred in California, the extent of the government's liability is premised upon California law.
 
 
 10
 The judgments of the district court in each case awarded damages against the United States in a manner consistent with California law. Based upon the apportionment of 50% fault to the United States, Judge Real, pursuant to California Civil Code §§ 1431 and 1431.2,[4] determined the government would have 100% liability (joint and several) for the economic damages and 50% liability (several) for the noneconomic damages. For purposes of section 1431.2, noneconomic damages are defined to include the "loss of society and companionship." The court concluded the United States was entitled to a 50% offset ($37,500) for the money paid in each case under the Warsaw Convention. Apparently, the district court viewed the award under the Warsaw Convention as noneconomic and allocated the offset as if the United States would be liable to Aeromexico only in that amount.
 
 
 11
 A payment pursuant to the Warsaw Convention is compensatory in nature, see, e.g., Warsaw Convention, Art. 17, 49 U.S.C.App. § 1502 Note (English translation provides the "carrier shall be liable for damage sustained"); In re Air Disaster at Lockerbie, Scotland, 928 F.2d 1267, 1281 (2nd Cir.), cert. denied sub nom. Rein v. Pan American World Airways, Inc., --- U.S. ----, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); Floyd v. Eastern Airlines, Inc., 872 F.2d 1462, 1486-87 (11th Cir.1989), rev'd on other grounds, --- U.S. ----, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); In re Air Crash Disaster at Gander, Newfoundland, 684 F.Supp. 927, 931 (W.D.Ky.1987), which includes both economic and noneconomic damages under California law. See, e.g., Krouse v. Graham, 19 Cal.3d 59, 137 Cal.Rptr. 863, 866-68, 562 P.2d 1022, 1025-27 (1977). As part of MDL 717, however, Judge Kenyon ruled that the United States and the Estate of Kramer were "jointly and severally liable" to Aeromexico for the payments made under the Warsaw Convention.
 
 
 12
 The effect of Judge Kenyon's order making the Estate of Kramer and the government jointly and severally liable to Aeromexico by way of both indemnity and primary liability is to treat the payment by Aeromexico as a payment of a portion of the economic damages.[5] The effect of Judge Real's order setting off 50% of the sums paid by Aeromexico under the Warsaw Convention is to treat that payment as if it were a payment exclusively for noneconomic loss. Judge Kenyon's order was entered in a proceeding in which the plaintiffs, Aeromexico, the United States, and the Estate of Kramer were all parties. Because it was entered before Judge Real's order and has not been appealed, and because all the parties to that order are not now before this court, we, as well as the parties, are bound by that order. Consequently, the payments made pursuant to the Warsaw Convention must be treated as payment for economic loss, making the United States 100% liable to Aeromexico and thus entitled to a 100% set off against plaintiffs. We reverse the district court's decision limiting the United States to a 50% ($37,500) credit.
 
 B. Award of Funeral and Burial Expenses
 
 13
 The United States contends it was error for the district court to award funeral and burial expenses to the plaintiffs. It is undisputed that Aeromexico paid all of the funeral and burial costs. The government argues the plaintiffs were not entitled to claim them as an element of damages. Additionally, the government maintains that because of Aeromexico's action against the United States for indemnity for all amounts paid to the plaintiffs, it will also ultimately be responsible to Aeromexico for the funeral and burial expenses paid on behalf of the decedent's heirs. As a result, the United States asserts it would pay funeral and burial expenses twice and the plaintiffs would be compensated for an item of damages they never incurred.
 
 
 14
 Under California law, the beneficiaries of an action for wrongful death are entitled to recover the reasonable value of funeral expenses paid or incurred by them. See Francis v. Sauve, 222 Cal.App.2d 102, 34 Cal.Rptr. 754, 766-67 (1963). As a matter of proof, "the amount paid or incurred is some evidence of reasonable value and, in the absence of contradictory evidence, is sufficient to support an award." Id.
 
 
 15
 At the trial, a copy of the funeral bills received by Mary Guzman for the funerals of her husband and son were admitted into evidence without objection. Later, in response to a government question, Mary Guzman testified that the funeral bills were paid by Aeromexico. Her attorney objected to that testimony based upon the collateral source rule and the court sustained the objection. Later, the United States made an offer of proof that, if permitted, Mary Guzman would testify that the funeral expenses for both her husband and her son were paid by Aeromexico. Similarly, the United States objected when the funeral bills were admitted in the Basye, Virginia Guzman, and Huerta[6] damage trials.
 
 
 16
 A federal court applies state law in matters involving the collateral source rule. Berg v. First State Ins. Co., 915 F.2d 460, 467 (9th Cir.1990). In California, the collateral source rule provides:
 
 
 17
 [I]f an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor.
 
 
 18
 Helfend v. Southern Cal. Rapid Transit Dist., 2 Cal.3d 1, 84 Cal.Rptr. 173, 175, 465 P.2d 61, 63 (1970). The collateral source rule applies "in tort cases in which the plaintiff has been compensated by an independent collateral source ... for which he had actually or constructively paid or in cases in which the collateral source would be recompensed [by the plaintiff] from the tort recovery through subrogation, refund of benefits, or some other arrangement." Id. 84 Cal.Rptr. at 181, 465 P.2d at 69.
 
 
 19
 Even though the California Supreme Court was aware that double recovery for the plaintiff may result in some circumstances and determined, nevertheless, that the rule was necessary and appropriate because it provided entirely necessary functions in the computation of damages, id. 84 Cal.Rptr. at 179-80, 465 P.2d at 67-68, the court did not intend "that the tortfeasor be required to pay doubly for his wrong--once to the injured party and again to reimburse the plaintiff's collateral source...." Id. 84 Cal.Rptr. at 179 n. 15, 465 P.2d at 67 n. 15.
 
 
 20
 Without deciding whether the payment by Aeromexico represented a collateral source, the United States cannot be made to pay the funeral and burial expense twice. It is undisputed that the plaintiffs did not pay that expense. Aeromexico paid those expenses and now is attempting to recover the expenditure from the United States. Clearly, when Aeromexico paid those sums, it did not view itself as an intermeddler or as a gift maker. Thus the plaintiffs' contention that the funeral expense payments should be treated as a charitable contribution collateral source must be rejected. To order the government to pay the plaintiffs, thereby allowing them a double recovery, is not problematic. What we cannot impose, however, is double payment from the government. See id. Because plaintiffs have received payment for the funeral and burial expenses from a non-collateral source, we vacate the district court's award of damages to the respective plaintiffs for funeral and burial costs.
 
 C. Present Value
 
 21
 The government contends the noneconomic damages awarded should be reduced to present value in a wrongful death action. It argues that under California law a private citizen defendant is entitled to have noneconomic damages in a wrongful death case reduced to present value. Thus, according to the United States, it was error for the district court to decline to reduce to present value the noneconomic damages awarded against the United States.[7]
 
 
 22
 We have set forth specific guidelines for calculating wrongful death damages under the FTCA. See United States v. English, 521 F.2d 63, 71-72, 76 (9th Cir.1975); accord DeLucca v. United States, 670 F.2d 843, 844 (9th Cir.1982); see also Shaw, 741 F.2d at 1205. These guidelines require that the appellate court: 1) compute the value of the plaintiff's loss according to state law; 2) deduct federal and state taxes from the portion for lost earnings; and 3) discount the total award to present value in accordance with state law. See Shaw, 741 F.2d at 1205, 1207.
 
 
 23
 In California, the wrongful death plaintiff may recover "lost present and future economic support as well as the pecuniary (as opposed to sentimental) value of such factors as lost comfort, society, companionship, care and protection." Fox v. Pacific Southwest Airlines, 133 Cal.App.3d 565, 184 Cal.Rptr. 87, 89 (1982) (citing Krouse, 19 Cal.3d 59, 137 Cal.Rptr. at 866-68, 562 P.2d at 1025-26), disavowed on other grounds by, Canavin v. Pacific Southwest Airlines, 148 Cal.App.3d 512, 196 Cal.Rptr. 82 (1983). Notwithstanding the fact that it is the pecuniary value of lost society, comfort, and care that is recovered in a wrongful death action, the California Supreme Court labeled these damages as nonpecuniary because they do not have an ascertainable economic value. Fox, 133 Cal.App.3d 565, 184 Cal.Rptr. at 89; Krouse, 19 Cal.3d 59, 137 Cal.Rptr. at 866, 562 P.2d at 1025. To recover for the loss of society, comfort, and care, however, the plaintiff must establish the pecuniary value of such loss and the amount is monetarily quantified. Fox, 133 Cal.App.3d 565, 184 Cal.Rptr. at 89. Under California law, the damages for wrongful death must be reduced to present value. Id.
 
 
 24
 The plaintiffs argue only that the record is devoid of evidence that the district court did not reduce each lump sum awarded for noneconomic damages to present value. Conversely, the United States charges the district court declined to apply a discount rate in order to reduce the award of noneconomic damages to present value. At the trial for V. Guzman, Basye, and Huerta, the government argued that the noneconomic damages awarded for loss of future society, comfort, and care must be discounted to present value. It is clear from the transcript of that proceeding that the judge was very reticent to discount the noneconomic award. Primarily, the court appeared concerned with what the appropriate method would be to determine present value. While the government presented some evidence as to the mechanics of discounting future damages, it ultimately left the precise method to the sound discretion of the trial judge.
 
 
 25
 In its award of noneconomic damages, the court does not expressly indicate whether the amount was discounted. A fair reading of the transcripts permits the inference that the court did not discount the noneconomic award. Additionally, the United States points out that the amounts awarded reflect the same amount requested by the plaintiffs' attorney who argued against discounting to reflect the time value of money.
 
 
 26
 If the district court did not reduce the noneconomic damages to present cash value, it was error under California law. Accordingly, we remand the issue for a determination of whether the lump sum award for noneconomic damages was discounted to present value; and if not, the court must discount to present value its previous determination of the future noneconomic harm suffered by each plaintiff, except Mary Guzman, et al.
 
 D. Sufficiency of the Evidence
 
 27
 The United States also challenges the sufficiency of the evidence to support the district court's award for economic damages to Reann Guzman, the infant daughter of deceased passenger Robert Guzman, in the Mary Guzman case. While Reann was awarded both economic and noneconomic damages, the government contends that there was no credible evidence to support the award. We disagree.
 
 
 28
 An award by the trial court is clearly erroneous if, after a review of the record, the court is "left with the definite and firm conviction that a mistake has been committed." Shaw, 741 F.2d at 1205 (quotation omitted). It is undisputed that an award for future earnings is a proper component of pecuniary damages under California law in wrongful death actions. See Cal.Civ.Pro.Code § 377; Carr v. Pacific Tel. Co., 26 Cal.App.3d 537, 103 Cal.Rptr. 120, 126 (1972). Nevertheless, there must be substantial evidence in the record to support such an award. Conner v. City of Santa Ana, 897 F.2d 1487, 1493 (9th Cir.), cert. denied, 498 U.S. 816, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990).
 
 
 29
 The evidence reveals the following: Robert Guzman was eighteen years old at the time of the accident. He was a sophomore in high school when he had a relationship with Reann's mother, Pauline Valenzuela. Robert never married Pauline; at the time of his death, they were not engaged. However, while Robert's mother, Mary Guzman, testified that, "to her knowledge," Robert and Pauline had no plans to marry, Pauline testified that she and Robert did discuss marriage, though they felt their young ages prevented such a step "at the time." Both Mary and Pauline agreed that Robert was a caring father who "wanted the best" for his daughter.
 
 
 30
 The government stresses that Robert's earning potential was extremely limited and that even plaintiffs' own expert testified the statistics showed that, given Robert's background, his total gross earnings over his whole life would be $105,000. In support of this statement, the government cites the testimony of plaintiff's expert, Stuart Neffeler. Neffeler testified that the "total earnings" of a "young male on the west coast, with a Hispanic name, with that amount of education" would be approximately $105,000.
 
 
 31
 At first glance, this statement would appear to support the government's position regarding Robert's lifetime earnings. However, when viewed in the context of Neffeler's prior testimony, it is apparent that the terms "total earnings" describe Robert's projected earnings during the first eighteen years of his daughter's life, not during his entire lifetime. Specifically, Neffeler testified that the amount needed to raise Reann to age 18 was $102,254, and that Robert would have earned enough to provide this level of support. Since Neffeler's $102,254 estimate of the amount needed to raise Reann was confined to the period before her eighteenth birthday, and Neffeler testified that Robert would have earned enough to provide this level of support, Neffeler's $105,000 estimate of Robert's "total earnings" was necessarily confined to the period preceding Reann's eighteenth birthday.
 
 
 32
 The experts agreed that Robert's ability to provide support for Reann was conditioned upon his occupying the same household as his daughter. As there is evidence that Robert and Reann might have occupied the same household, it was not error to award Reann $102,254 in economic losses for the death of her father.
 
 CONCLUSION
 
 33
 The judgment of the district court is vacated and the case is remanded to the district court to: 1) reduce the United States' liability by $37,500 to the plaintiffs who received the payment under the Warsaw Convention; 2) set aside the awards against the United States for funeral and burial expenses; and 3) reduce the awards for noneconomic damages to present value if the court has not already done so.
 
 
 34
 VACATED AND REMANDED.
 
 
 
 [1]
 Prior to the trial on liability, the Estate of Kramer interpled the $1.02 million in proceeds from Kramer's liability insurance. Although the Estate remains as a defendant in this action, it was not represented in the liability trial or the subsequent damage trials. In addition, apart from the insurance proceeds, there are no other Estate assets available to satisfy the judgment
 
 
 [2]
 Although there are four cases, they involve five deceased passengers. Mary Guzman's husband, Joseph Guzman, and son, Robert Guzman, were both killed in the accident. She brought a wrongful death action for the loss of her husband. Additional plaintiffs in that action were Joseph's three adult children and Reann Guzman, the infant daughter of Robert and the sole plaintiff claiming damages as a result of his death. Barbara Basye brought action to recover for the death of her husband, Thomas Basye. Additional plaintiffs in that action were Thomas's two children. Virginia Guzman brought action to recover for the death of her husband, husband, Manuel Guzman. Additional plaintiffs in that action were Manuel's two adult children. Marcelina Huerta brought action to recover for the death of her husband, Gregorio Huerta. Additional plaintiffs in that action were Gregorio's three adult children
 
 
 [3]
 Damages were awarded as follows:
 Mary Guzman et al.
 Plaintiff Mary Guzman was awarded the following damages from the United States and the Estate of Kramer for the death of her husband, Joseph Guzman:
 Economic Noneconomic
 Funeral Expenses $ 3,412.50
 Loss of Support and Services $553,000.00
 Loss of Comfort
 Care and Society $1,500,000.00
 In fashioning the award against the United States only, Judge Real halved the noneconomic award and deducted $37,500.00 from the damages to account for the United States' 50% set-off for the Warsaw payment, apparently upon a finding that Mary Guzman received the Warsaw payment from Aeromexico for Joseph's death.
 Plaintiffs Lorraine Ayala, Alex Guzman, and Sandra Moldonado were each awarded $200,000 in noneconomic damages from the United States and the Estate of Kramer for the death of their father, Joseph Guzman. Judge Real determined that one-half of these amounts were recoverable against the United States.
 Plaintiff Reann Guzman was awarded the following damages from the United States and the Estate of Kramer for the death of her father, Robert Guzman:
 Economic Noneconomic
 Loss of Support $102,254.00
 Loss of Comfort
 Care and Society $325,000.00
 In fashioning the award against the United States only, Judge Real halved the noneconomic award and deducted $37,500.00 from the damages to account for the United States' 50% set-off for the Warsaw payment, apparently upon a finding that Reann Guzman received the Warsaw payment from Aeromexico for Robert's death.
 Virginia Guzman et al.
 Plaintiff Virginia Guzman was awarded the following damages from the United States and the Estate of Kramer for the death of her husband, Manuel Guzman:
 Economic Noneconomic
 Funeral Expenses $ 7,678.05
 Loss of Support and Services $243,700.00
 Loss of Comfort
 Care and Society $1,500,000.00
 In fashioning the award against the United States only, Judge Real halved the noneconomic award and deducted $37,500.00 from the damages to account for the United States' 50% set-off for the Warsaw payment, apparently upon a finding that Virginia Guzman received the Warsaw payment from Aeromexico for Manuel's death.
 Plaintiffs Manuel Guzman Jr., Susan Harbour, and Steven Guzman were each awarded $125,000 in noneconomic damages from the United States and the Estate of Kramer for the death of their father, Manuel Guzman. Judge Real determined that one-half of these amounts were recoverable against the United States.
 Marcelina Huerta et al.
 Plaintiff Marcelina Huerta was awarded the following damages from the United States and the Estate of Kramer for the death of her husband, Gregorio John Huerta:
 Economic Noneconomic
 Loss of Support and Services $116,950.00
 Loss of Comfort
 Care and Society $ 850,000.00
 In fashioning the award against the United States only, Judge Real halved the noneconomic award and deducted $37,500.00 from the damages to account for the United States' 50% set-off for the Warsaw payment, apparently upon a finding that Marcelina Huerta received the Warsaw payment from Aeromexico for Gregorio's death.
 Plaintiffs John Huerta, Johnna Huerta, and Martin Huerta were each awarded $100,000 in noneconomic damages from the United States and the Estate of Kramer for the death of their father, Gregorio Huerta. Judge Real determined that one-half of these amounts were recoverable against the United States.
 Barbara Basye et al.
 Plaintiff Barbara Basye was awarded the following damages from the United States and the Estate of Kramer for the death of her husband, Thomas Basye:
 Economic Noneconomic
 Funeral Expenses $ 7,166.18
 Loss of Support and Services $232,261.00
 Loss of Comfort
 Care and Society $ 700,000.00
 In fashioning the award against the United States only, Judge Real halved the noneconomic award and deducted $37,500.00 from the damages to account for the United States' 50% set-off for the Warsaw payment, apparently upon a finding that Barbara Basye received the Warsaw payment from Aeromexico for Thomas's death.
 Plaintiff April Basye Yaro was awarded $150,000 and plaintiff Michael Basye was awarded $10,000 in noneconomic damages from the United States and the Estate of Kramer for the death of their father, Thomas Basye. Judge Real determined that one-half of these amounts were recoverable against the United States.
 
 
 [4]
 Section 1431 provides in relevant part that: "an obligation imposed upon several persons ... is presumed to be joint, and not several, except as provided in Section 1431.2...."
 Section 1431.2(a) provides:
 In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount.
 
 
 [5]
 Judge Kenyon was aware of the effect of section 1431.2(a). In an earlier MDL 717 order, he held that section 1431.2 applied to the instant case
 
 
 [6]
 Although the court found the plaintiffs in each case were entitled to funeral and burial expenses, the final order in the Huerta case did not include an award for that item. Accordingly, the United States does not request a reduction
 
 
 [7]
 The United States concedes this issue was not raised in Mary Guzman, et al., No. 90-55808. As such, we affirm the amount of noneconomic damages awarded to Mary Guzman