116 F.3d 485
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ray NAVIS, Plaintiff-Appellant-Cross-Appellee,
v.
UNITED STATES of America, Defendant-Appellee-Cross-Appellant.
 Nos. 94-56354, 94-56356.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 1996.
Decided June 13, 1997.
 
 On Appeal from the United States District Court Central District of California, No. CV-87-07257-MRP; Mariana R. Pfaelzer, District Judge, Presiding.
 BEFORE: BROWNING, WALLACE, and FARRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Each party appeals from the district court's decision in a wrongful death action brought by Ray Navis against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse in part and affirm in part.
 
 
 3
 We review the district court's damages award under the FTCA for clear error. In re Air Crash Disaster Near Cerritos, California, on August 31, 1986, 982 F.2d 1271, 1275 (9th Cir.1992). We review the district court's legal determinations de novo. Id.
 
 I. The $2,092,151 Economic Damage Award
 
 4
 The district court awarded Navis $2.1 million for "past and future economic loss based on the losses of the continuing economic benefits including business coaching, training, mentoring and tutoring from his father and mother." At various times in the order, this award is also referred to as a "lost economic gift" and "lost contributions of business advice, guidance, coaching, training and the like."
 
 
 5
 However, regardless of what the award is called, it was calculated as the difference between what Navis would have earned as a 50% partner in his father's business and what his reasonable earning power outside of his father's business was. The award was for Navis' lost earnings caused by his parents' death.
 
 
 6
 Navis argues that because he received an amount greater than his market value while working for his father, his father was actually giving him a gift. However, the gift he received was the original 50% partnership in the business, which he acquired before his parents' deaths. Revenues Navis subsequently received as a partner were not a gift.
 
 
 7
 In an effort to avoid the conclusion that the award was for lost earnings, Navis also argues that it was an award for lost business advice. As noted, however, the award was calculated based solely on what Navis would have earned had the business continued to thrive. The award was not for lost business advice.
 
 
 8
 As the district court concluded, California law is unclear as to whether a plaintiff in a wrongful death action can recover for his own lost earnings. California allows recovery by an heir in a wrongful death action for damages that "under all circumstances of the case, may be just." Cal.Code Civ. Proc. § 377.61. The measure of damages is the value of the benefits the heirs could reasonably have expected to receive from the deceased. Canavin v. Pacific Southwest Airlines, 148 Cal.App.3d 512, 520 (1983).
 
 
 9
 California case law "has further defined wrongful death damages to include the following three elements: (1) The present value of future contributions from the decedent to his surviving heirs; (2) the value of any personal service, advice or training that probably would have been given; and (3) the value of the decedent's society and companionship." Carr v. Pacific Telephone Co., 26 Cal.App.3d 537, 544-45 (1972). This enumeration does not include lost earnings by survivors. Although California case law also has not specifically excluded these damages, no case has awarded wrongful death damages in any category other than the three enumerated ones. We will not do so either. The district court's $2.1 million economic damage award calculated on the basis of lost earnings of Navis is vacated.
 
 II. The $1,387,594 Economic Damage Award
 
 10
 The district court awarded Navis $1.4 million for the loss of the "substantial inter vivos gift" of the 50% of his father's business that Navis would have received upon his father's retirement. The district court found that Navis' father would have retired at age 70, in the year 2000.
 
 
 11
 The United States argues that the district court's finding was clearly erroneous because the only evidence regarding Navis' father retiring was Navis' statement that "My Dad was of the opinion, as I am, also, that retirement was for the birds, and he did not have any intention of retiring." However, the district court relied on a fact brief submitted by Navis, which the United States stipulated Navis would have testified to if asked, that stated: (1) Navis' father was grooming Navis for when Navis would take over the business in 8 to 10 years when the father would be 65 or 67; and (2) Navis' father would probably have continued to work until age 65 to 67, and possibly to age 70. The district court did not clearly err in concluding that Navis' father would have retired at 70.
 
 
 12
 However, the district court did err in awarding Navis the value of the business that he would have received in the year 2000 on the theory that it was a lost gift. Navis had already received the business because he inherited it when his parents died. Navis argues that the business would have been more valuable in 2000 because by that time he would have had twenty years of training and could have maintained the business' success. However, this argument shows that the loss suffered by Navis because of his parents' deaths was the loss of business advice, not the loss of the business. See Carr, 26 Cal.App.3d at 544-45 (value of personal advice or training can be recovered in wrongful death action).
 
 
 13
 The district court stated that the loss of business advice was included in the $2.1 million award (see supra part I). However, as explained, that award was calculated based solely on Navis' lost earnings, and did not include any compensation for the lost business advice. The damage caused by the lost business advice is the difference in value between what Navis did receive (the business in 1986 without business acumen) and what he would have received (the business in 2000 with business acumen). The business failed in 1986 because Navis lacked the skill to keep it going. The district court found that by 2000 Navis would have acquired the skill necessary to keep the business running. This finding is not clearly erroneous. Navis would have received a successful business in 2000, which the district court valued at $1.4 million, and instead received a business doomed to failure, and therefore worth nothing. Thus, his damage is $1.4 million.
 
 
 14
 Although this damage is an award that compensates Navis for earnings he would have had in some sense, it is different in kind from the $2.1 million award that we vacate. The $1.4 million is awarded for a loss in earnings caused by the loss of Navis' father's business advice. The $2.1 million award is a loss of earnings caused only because his father had died and the business was no longer profitable--it does not compensate for lost advice.
 
 
 15
 California law governs the issue of economic versus non-economic damages. California Civil Code § 1431.2 defines these terms: "[T]he term 'economic damages' means objectively verifiable monetary losses including ... loss of business or employment opportunities." Cal. Civ.Code § 1431.2(b)(1). "[T]he term 'non-economic damages' means subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation." Cal. Civ.Code § 1431.2(b)(2).
 
 
 16
 The $1.4 million in damages is an award for lost business advice, which caused Navis' business to fail. This is close enough to a lost business or employment opportunity (though not identically equal) to meet the statutory definition. Further, it is not similar to the types of non-economic damage listed in the statute. Since we sit as a reviewing court and not as fact finders, we must affirm on this stipulated record. The $1.4 million economic damage award is affirmed for reasons different from those stated in the district court's order.
 
 III. Set Off for Aeromexico Indemnification
 
 17
 The district court reduced the award to Navis by $150,000, the amount Navis received as settlement from Aeromexico under the Warsaw Convention for the deaths of his two parents. Navis argues that the United States should not be able to set off the full amount of the settlement because the United States is only 50% liable for non-economic damages to Navis.
 
 
 18
 The payments made by Aeromexico pursuant to the Warsaw Convention are treated as payments for economic loss. Air Crash Disaster Near Cerritos, 982 F.2d at 1276 (case involving same air crash as this case). Therefore, the United States is 100% liable to Aeromexico for the $150,000 settlement, and is entitled to a 100% set off against Navis. Id.
 
 IV. Conclusion
 
 19
 The $2,092,151 economic damage award is vacated. The $1,387,594 economic damage award is affirmed. The $150,000 set off for the United States is affirmed. The total economic award is therefore $1,237,594. The United States has not appealed the district court's award of $1,035,000 to Navis for the 50% of non-economic damages for which the United States is liable. We remand to the district court to enter judgment for Navis and against the United States for a total of $2,272,594.
 
 
 20
 As stated in the district court's "Second Amended Findings of Fact and Conclusions of Law," the judgment shall bear interest at the legal rate pursuant to the dictates of 31 U.S.C. § 1304(b)(1)(A).
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3