Doris SMALLWOOD and Marla Gladney–Smallwood, individually and as Joint Personal Representatives of the Estate of Lloyd C. Smallwood, Deceased, Plaintiffs,

v.

AMERICAN TRADING & TRANSPORTATION CO., Defendants.

No. C–92–0869 MHP.

United States District Court, N.D. California.

Dec. 9, 1993.

John F. Penrose, Schachter Kristoff Orenstein & Berkowitz, John R. Hillsman, McGuinn Hillsman & Palefsky, San Francisco, CA, for Doris Smallwood and Marla Gladney–Smallwood.

David W. Condeff, Brian Dalrymple, Lillick & Charles, San Francisco, CA, for American Trading & Transp. Co.

Stanley L. Gibson, Caryn Bortnick, Neil E. Olson, Derby Cook Quinby & Tweedt, San Francisco, CA, for Pacific Chemical Lab.

Frank B. Hugg, Jeanne M. Bates, San Francisco, CA, for Legion Ins. Co.

## OPINION

PATEL, District Judge.

Plaintiffs, Doris Smallwood and Marla Gladney–Smallwood, on behalf of various alleged heirs and dependents, bring this action for the alleged wrongful death of Lloyd C. Smallwood. Mr. Smallwood was a professional welder who ignited a high pressure hydraulic gas line while working on an oil tanker and died in the ensuing fire. Plaintiffs bring this action under the general maritime law as modified by section 5(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA" or, "the Act"), 33 U.S.C. § 905(b), against the owner of the oil tanker, defendant, American Trading & Transportation Company ("ATTRANSCO").

ATTRANSCO filed a cross claim against third party defendant, Pacific Chemical Labs, Inc. ("PCL"), a group of expert marine chemists retained by the Southwest Marine ship repair yard ("SWM"), Mr. Smallwood's employer, to certify that certain areas aboard the vessel were safe for hot work (welding).

The relevant undisputed facts can be briefly summarized. ATTRANSCO contracted with SWM, an expert ship repair yard and an independent contractor to perform work on a vessel owned by ATTRANSCO, the "American Trader." Work on the vessel commenced at SWM in San Francisco on July 8, 1991 and was completed on August 5, 1991. Lloyd Smallwood was killed on July 18, 1991 while welding in the lower one-third center portion of the forward deep tank when he burned a hole in an unprotected hydraulic pipeline causing the pressurized hydraulic fluid to ignite.

SWM had hired PCL to certify areas of the ship that were safe for hot work. PCL had not certified the area in which Lloyd Smallwood was working as safe for hot work, but SWM's Competent Person Log for July 13–18 listed that area as safe for such work. In addition, SWM employees mistakenly believed it to be safe despite the fact that the hydraulic pipelines in the forward deep tank were pressurized at the time of the accident.

The court has previously filed orders granting PCL's motion for summary judgment and denying in part and granting in part ATTRANSCO's motion for summary judgment as to the duties it owed to Lloyd Smallwood. The matter is currently before the court on defendant's motion in limine to exclude evidence supporting a claim for nonpecuniary damages. The court must determine whether plaintiffs may recover nonpecuniary damages for loss of society in a case involving the death of a non-seaman in state territorial waters.

Having considered the parties' submissions and arguments, the court enters the following Memorandum and Order.

### DISCUSSION

#### I. *Applicable Law*

Maritime wrongful death law is as uncertain as the "implacable" seas of Herman Melville. Statutory and general maritime law remedies seem to have been crafted independently of, and often in conflict with, each

other. In determining the appropriate remedies for survivors of longshore workers who have been injured aboard vessels, this court embarks upon these uncertain waters and attempts to navigate the conflicting currents.[1]

The statutory remedies provided for by Congress include the Jones Act, 46 U.S.C.App. § 688(a), the Death on the High Seas Act ("DOHSA"), 46 U.S.C.App. §§ 761 et seq., and section 5(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). The judicially-crafted remedies arise from the federal court's well-recognized authority to "legislate" in the arena of admiralty law. *See, e.g., Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 96, 101 S.Ct. 1571, 1583, 67 L.Ed.2d 750 (1981) (noting that the constitutional grant of general admiralty jurisdiction to the federal courts is a proper basis for the development of judge-made rules of maritime law).

With respect to the scope of damages for wrongful death, these remedies often appear to overlap and contradict each other. Indeed, as two leading commentators note, "[t]he perils of the sea, which mariners suffer and shipowners insure against, have met their match in the perils of judicial review." G. Gilmore & C. Black, *The Law of Admiralty* § 6–1, at 272 (2d ed. 1975).

The question here is whether compensation for loss of society is available under the general maritime law as modified by section 5(b) of the LHWCA. To answer this question it is necessary to review the tortuous history of negligence and unseaworthiness in admiralty law and the evolution of judicially created and legislatively enacted remedies. Doctrines of negligence and unseaworthiness have developed along two different courses in maritime law. In addition, though remedies for seamen and remedies for longshore workers have evolved separately, they often intertwine.

**A. *Historical Development***

The first remedy afforded a seaman against the shipowner for injuries sustained as the result of the negligence of the owner or crew, other than the ancient maritime remedy for maintenance and cure, was the judicially-created remedy of unseaworthiness established by the Supreme Court in *The Osceola,* 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). *The Osceola* defined the remedy as one for "indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." *Id.* at 175, 23 S.Ct. at 487. The Court found precedent for this remedy in British and Continental admiralty law, as well as in some lower court decisions from this country. On the other hand, the Court held that seamen are not entitled to "indemnity for the negligence of the master, or any member of the crew" but are limited solely to maintenance and cure. *Id.*

■ Unseaworthiness, though a species of negligence, is a form of strict liability imposed upon the vessel owner for failure to supply a seaworthy vessel and crew. It is also a warranty premised on the theory that a vessel owner warrants to the seaman a seaworthy vessel and crew. Courts have said that this strict liability or warranty is justified by a special solicitude for seamen, who find themselves at sea at the mercy of the condition of the vessel and the experience of the crew. *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 387, 90 S.Ct. 1772, 1781, 26 L.Ed.2d 339 (1970). For the breach of this warranty, federal courts have created a range of remedies since the decision in *The Osceola.*

■ The first federal legislative remedies were created in 1920 when Congress adopted the Jones Act and the Death on the High Seas Act. The Jones Act extends the Federal Employees' Compensation Act, 5 U.S.C. § 8101 et seq., to seamen by providing a negligence cause of action and tort damages to seamen injured or killed in the course of

---

1. While Mr. Smallwood worked for a ship repair yard, rather than as a longshore worker, the Ninth Circuit has held the same legal principles applicable. *Cook v. Exxon Shipping Co.,* 762 F.2d 750, 752 (9th Cir.), *amended in part on reh'g,* 773 F.2d 1001 (1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986).

their employment. Despite the enactment of the Jones Act, courts have not treated it as the exclusive remedy for seamen, but have continued to allow seamen to assert claims for unseaworthiness under *The Osceola* doctrine. Thus, it is common for injured seamen to allege claims under both the Jones Act and the warranty of seaworthiness.[2] The benefit to the seaman of a claim for unseaworthiness is the higher duty of care required of the vessel owner. The result of these developments is that a seaman has dual claims for the same injury—one judicially created, the other statutory.

■ The Death on the High Seas Act covers the death of any person, seamen as well as non-seamen, caused by "wrongful act, neglect, or default" occurring on the high seas (defined as one marine league, or approximately three miles, from shore). 46 U.S.C.App. § 761. Unlike the Jones Act, which provides a negligence claim only, DOHSA has been interpreted to include claims for both negligence and unseaworthiness. *See Walston v. Lambertsen,* 349 F.2d 660 (9th Cir.1965). Both acts limit recovery to pecuniary loss, DOHSA by its explicit provisions, 46 U.S.C.App. § 762, and the Jones Act by interpretation. *See Lindgren v. United States,* 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686 (1930).

Those who loaded vessels or worked aboard them as longshore workers were not so quick to receive the solicitude bestowed upon seamen. Before 1926, longshore workers had to look to state land-based remedies for injuries they sustained during the course of their employment. In *International Stevedoring Co. v. Haverty,* 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926), the Supreme Court extended the benefits of the Jones Act to longshore workers, permitting an action against the employer rather than the shipowner.

Six months later Congress created a workers' compensation type remedy for longshore workers by enacting the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. The remedy provided was an exclusive one against the employer of the longshore worker, except that if a valid state workers' compensation system was available to the longshore worker he could not resort to the Act. As a result of these provisions longshore workers could no longer bring an action under the Jones Act unless they were members of the crew and, therefore, qualified as seamen. *See Swanson v. Marra Bros.,* 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946).

On the same day the Supreme Court decided *Swanson* it decided *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). In *Sieracki* the Supreme Court extended the unseaworthiness benefits under *The Osceola* to longshore workers. Acknowledging that the LHWCA was established as the exclusive remedy for longshore workers against their employers, the Court held the Act was not exclusive of remedies against others and that "for injuries incurred while working on board the ship in navigable waters the stevedore is entitled to the seaman's traditional and statutory protections, regardless of the fact that he is employed immediately by another than the owner." *Id.* at 99, 66 S.Ct. at 879. Thus, as of 1946, injured longshore workers had a statutory workers' compensation type remedy against their employers and a judicially-created seaman's type remedy for unseaworthiness against the vessel owner.

Although *Sieracki* states that a longshore worker working under seamen's conditions has the seaman's "statutory protections," a longshore worker could not sue the vessel owner for Jones Act negligence unless he qualified as a seaman. The Supreme Court framed the question in *Sieracki* as whether the traditional obligation of seaworthiness ran to a longshore worker. The Jones Act was not in issue, nor was any other theory of statutory or traditional negligence.[3]

---

**2.** As discussed *infra,* the Supreme Court has held in a recent decision that the damages recoverable for unseaworthiness are circumscribed by those allowable under the Jones Act. *Miles v. Apex Marine Corp.,* 498 U.S. 19, 33–34, 111 S.Ct. 317, 326–27, 112 L.Ed.2d 275 (1990).

**3.** Despite the clear language in *Sieracki,* in 1981 the Supreme Court cited it for the proposition that a longshore worker could recover from a shipowner for "unseaworthiness or negligence." *Scindia Steam Navigation Co. v. De Los Santos,*

Congress made an effort to clear up the confusion in 1972 when it amended the LHWCA to permit an action against the shipowner for injuries caused by the *negligence* of the vessel. Congress specifically provided that this is the sole remedy of the longshore worker against the vessel and that the warranty of unseaworthiness does not apply to longshore workers.[4]

In amending the Act, Congress made it clear that it was disavowing *Sieracki*. The House Committee report states:

the seaworthiness concept was developed by the courts to protect seamen from the extreme hazards incident to their employment which frequently requires long sea voyages and duties of obedience to orders not generally required of other workers. The rationale which justifies holding the vessel absolutely liable to seamen if the vessel is unseaworthy does not apply with equal force to longshoremen and other non-seamen working on board a vessel while it is in port.

H.R.Rep. No. 1441, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4698, 4703.

Congress also intended that admiralty law rather than state law should define the contours of negligence under the Act. Therefore, the Committee indicated that comparative rather than contributory negligence should apply and the assumption of risk doctrine, which is foreign to admiralty negligence, would not obtain. *See id.*

Despite its efforts at clarity, Congress failed to specify the elements of damages recoverable under the amendments. The statute merely states the injured person or "anyone otherwise entitled to recover damages" may bring an action against the vessel. 33 U.S.C. § 905(b). The statute is silent as to the type of damages that may be recovered; however, the Committee noted that this third party remedy against the vessel "would place vessels in the same position, insofar as third party liability is concerned, as land-based third parties in non-maritime pursuits." 1972 U.S.C.C.A.N. at 4703.

While these developments were being pursued on the legislative front, the judiciary was pursuing some of its own with respect to wrongful death. It is these two divergent approaches that collide in the type of action at bar.

In 1970, the Supreme Court decided *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Prior to *Moragne*, the prevailing rule was that laid down in 1886 in *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). *The Harrisburg* held that maritime law does not provide a cause of action for wrongful death. The history of the rule and its harshness in light of the evolving law in land-based wrongful death cases is thoroughly covered by the Supreme Court in *Moragne*, which explicitly overruled *The Harrisburg*. *Moragne*, 398 U.S. at 381–93, 90 S.Ct. at 1777–84.

Although prior to 1970 a longshore worker could bring an action against a vessel owner for injuries caused by the vessel, the action was not based on any statute, but rather on the judicially created doctrine of unseaworthiness. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). However, prior to 1970 a longshore worker's survivors had no claim for wrongful death unless the worker's death occurred on the high seas or he was serving as a Jones Act seaman at the time of his death.

There were other anomalies in maritime law as a result of the patchwork legislation and judicial developments, anomalies the Supreme Court attempted to correct in *Moragne*. The Court noted that death on the high seas was covered by DOHSA under theories of negligence and unseaworthiness, because the statute covers death caused by any "wrongful act, neglect or default occurring on the high seas...." *Moragne*, 398 U.S. at 394–96, 90 S.Ct. at 1784–85 (quoting section 1 of DOHSA). For wrongful deaths occurring in territorial waters, a Jones Act seaman was covered only on negligence grounds under the Jones Act. On the other

---

451 U.S. 156, 164, 101 S.Ct. 1614, 1620, 68 L.Ed.2d 1 (1981).

**4.** The amendments did not affect the workers' compensation type remedy that longshore workers have against the employer.

hand, a longshore worker's survivors could recover for wrongful death occurring in territorial waters only under applicable state statutes, *see id.* at 396, 90 S.Ct. at 1785, which provided no uniform rule since some states did not have a wrongful death cause of action. Thus, the Supreme Court opined:

> Our recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts.

*Id.* at 401, 90 S.Ct. at 1788. With that rationale the Supreme Court adopted a remedy for wrongful death under general maritime law premised on the doctrine of unseaworthiness.[5]

The contours of the remedies for a *Moragne* claim were laid out in the next Supreme Court decision to take up this issue, *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). *Gaudet* also involved a wrongful death action brought by the widow of a longshore worker who died of injuries sustained aboard a vessel in navigable or territorial waters. *Gaudet* took up where *Moragne* left off and held that non-pecuniary damages for loss of society are recoverable in a general maritime wrongful death action based on unseaworthiness. In reaching its conclusion, the *Gaudet* Court declined to apply DOHSA, which explicitly limits recovery to pecuniary loss. Since *Gaudet* was brought under the general maritime law as defined by *Moragne,* the Court held that it was not bound by either state or federal statutes. To the contrary, Congress' insistence that [DOHSA] not extend to territorial waters ... indicates that

Congress was not concerned that there be a uniform measure of damages for wrongful death, for in many instances state wrongful death statutes extending to territorial waters provided a more liberal measure of damages than [DOHSA].

*Id.* at 588 n. 22, 94 S.Ct. at 816 n. 22 (citations omitted). As the Court explained in a later case, *Gaudet* rests on an explicit choice to reject DOHSA's pecuniary loss standard and instead follow the consensus amongst the states and "the humanitarian policy of maritime law," both of which allowed recovery for loss of society. *Mobil Oil Corp., v. Higginbotham,* 436 U.S. 618, 622, 98 S.Ct. 2010, 2013, 56 L.Ed.2d 581 (1978). "In sum, the Court made a policy determination in *Gaudet* which differed from the choice made by Congress when it enacted the Death on the High Seas Act." *Id.*

Although *Gaudet* declined to follow DOHSA's proscription against non-pecuniary relief, the Supreme Court made it clear in *Higginbotham* that the *Moragne/Gaudet* general maritime law wrongful death action does not replace DOHSA, nor does it supplement DOHSA to allow recovery of non-pecuniary damages in deaths occurring on the high seas. *See id.* at 624–25, 98 S.Ct. at 2014–15. *Higginbotham* arose out of a fatal helicopter crash one hundred miles from the Louisiana shore. In an action brought by the widows of the passengers, the Court denied damages for loss of society because DOHSA provides no basis for non-pecuniary damages. The Court distinguished *Gaudet* on the grounds that the accident in that case took place in territorial waters where DOHSA does not apply. Confronted with the glaring anomaly that once a vessel crosses the imaginary three mile line its passengers

---

5. The Ninth Circuit has indicated in an action brought by a seaman under the Suits in Admiralty Act, 46 U.S.C.App. § 742, that while it found no case stating whether a *Moragne* claim may be based on negligence, as distinguished from unseaworthiness, it would extend *Moragne* to cover claims based on negligence. *Nelson v. United States,* 639 F.2d 469, 473 (9th Cir.1980). This discussion, however, predated the Supreme Court's opinion in *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), discussed in detail below.

The Supreme Court of Virginia parsed *Moragne* more clearly, noting that "unseaworthiness" is a "term of art" and is not the same as negligence. That court was careful to point out that *Moragne* did not have anything to do with negligence. *See Brown v. Brown,* 226 Va. 320, 326–27, 309 S.E.2d 586 (1983). *But see* G. Gilmore & C. Black, *The Law of Admiralty* § 6–32, at 368 (2d ed. 1975) (stating without explanation that *Moragne* covers deaths caused by negligence as well as unseaworthiness).

and seamen lose their *Gaudet* recovery, the Court explained:

> We recognize today, as we did in *Moragne*, the value of uniformity, but a ruling that DOHSA governs wrongful death recoveries on the high seas poses only a minor threat to the uniformity of maritime law. Damages aside, none of the issues on which DOHSA is explicit have been settled to the contrary by this Court in either *Moragne* or *Gaudet*. Nor are other disparities likely to develop.... It is true that the measure of damages in coastal waters will differ from that on the high seas, but even if this difference proves significant, a desire for uniformity cannot override the statute.

*Id.* at 624, 98 S.Ct. at 2014 (footnotes omitted).

The Supreme Court had occasion to revisit the issue of non-pecuniary damages for a spouse of a longshore worker injured in territorial waters in *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980). Although decided in 1980, the *Alvez* accident occurred before the 1972 amendments, as noted by the Court in acknowledging the plaintiff's claim for unseaworthiness. *Id.* at 276 n. 2, 100 S.Ct. at 1675 n. 2. Following *Gaudet*, the Court permitted an analogous type of non-pecuniary damages for loss of society or consortium to the spouse of an injured longshore worker. It is clear that *Alvez*, like *Gaudet*, addressed only damages based upon the doctrine of unseaworthiness. *See id.* at 276–81, 100 S.Ct. at 1674–77. The Supreme Court in *Alvez* did not discuss the implications of the 1972 amendments upon damages in that case.

At this point, it is useful to summarize the two courses of maritime remedies thus developed. On the judicial front, the Supreme Court, in the absence of legislation (*see Moragne*, 398 U.S. at 405 n. 17, 90 S.Ct. at 1790 n. 17) had created a maritime wrongful death remedy based on the doctrine of unseaworthiness. Four years later, in *Gaudet*, the Court allowed non-pecuniary damages, such as loss of society, for the cause of action it created in *Moragne*. And, six years after *Gaudet*, the Court permitted similar damages for the spouse of an injured longshore worker.

On the legislative front, different law was being developed. Two years after *Moragne* Congress limited longshore workers to a claim for negligence. Curiously, *Gaudet* makes no mention of the newly adopted amendments and the fact that they precluded the very claim for which it was creating a non-pecuniary remedy. On the other hand, at the time Congress adopted its 1972 amendments the judiciary had not created it non-pecuniary damages remedy. Because it was clear from the record in *Gaudet* that the injuries and death occurred before the adoption of the 1972 amendments, the statutory amendments did not apply.

The Court showed more concern for the inconsistencies permeating this area of the law when the next opportunity presented itself. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), involved the death of a Jones Act seaman working aboard a ship docked in the harbor of Vancouver, Washington. The decedent's mother brought a wrongful death action based on negligence under the Jones Act and breach of the warranty of seaworthiness under general maritime law. *Id.* 498 U.S. at 21–23, 111 S.Ct. at 320. First, the Court considered whether *Moragne*'s holding, creating a general maritime wrongful death action based on unseaworthiness, applies to a Jones Act seaman. Although the Jones Act provides a cause of action against the seaman's employer for wrongful death resulting from negligence, not unseaworthiness, the Court found that the Act "evinces no general hostility to recovery under maritime law." *Id.* 498 U.S. at 29, 111 S.Ct. at 324.[6] Therefore, the Court reaffirmed the continuing vitality of *Moragne*'s general maritime law

---

**6.** As the Court noted, the Jones Act does not interfere with a seaman's general maritime claims for injuries resulting from unseaworthiness, *Miles*, 498 U.S. at 29–30, 111 S.Ct. at 324 (citing *Pacific Steamship Co. v. Peterson*, 278 U.S. 130, 139, 49 S.Ct. 75, 77, 73 L.Ed. 220 (1928)), nor does the Act prevent the recovery for a seaman's tortious death due to unseaworthiness created by DOHSA. 498 U.S. at 29–30, 111 S.Ct. at 324 (citing *Kernan v. American Dredging Co.*, 355 U.S. 426, 430, 78 S.Ct. 394, 397, 2 L.Ed.2d 382 (1958)).

wrongful death cause of action in the case of a seaman. Of course, for a longshore worker Congress had abrogated the *Moragne* claim by its 1972 amendments. But the most significant aspect of *Miles* is its emphasis on the need for uniformity. Explaining the policy and overruling explicit congressional reasons for its conclusions, the Court held that the damages recoverable on a seaman's *Moragne* claim must be limited by Jones Act damages.

### B. *After Miles*

█ Having traversed these murky waters, the court must return to the inquiry at hand: in light of *Miles,* are loss of society damages still available to a longshore worker killed within state territorial waters?

Defendants argue that *Higginbotham* and *Miles* have effectively overruled *Gaudet.* According to the *Higginbotham* Court, "[*Gaudet*'s] holding ... applies only to coastal waters." 436 U.S. at 623, 98 S.Ct. at 2014. The *Miles* Court concurred: "The holding of *Gaudet* applies only in territorial waters, and it applies only to longshoremen." 498 U.S. at 31, 111 S.Ct. at 325. However, the *Miles* Court went one step further, noting that the suit in *Gaudet* was filed before the 1972 amendments, and explicitly stated that "as with *Moragne,* the 1972 amendments to LHWCA have rendered *Gaudet* inapplicable on its facts." *Id.* 498 U.S. at 31, 111 S.Ct. at 325 n. 1.

*Miles,* read together with the amendments to the LHWCA, compels only one rational conclusion: the unseaworthiness underpinnings of *Gaudet* damages have been removed for longshore workers. Indeed, to hold otherwise would lead to an absurd result. Longshore workers' survivors would be entitled to a broader range of damages for injuries aboard a vessel in territorial waters than would the survivors of seamen for whom the beneficence of general maritime law and the doctrine of unseaworthiness was created. Such a holding would also be inconsistent with the intent of Congress, as described above. *See* 1972 U.S.C.C.A.N. at 4703.

The question is whether damages based on the doctrine of unseaworthiness, i.e., *Gaudet*–type damages, may be read into the LHWCA. Post–*Miles* cases are inconclusive.

In *Miller v. American President Lines, Ltd.,* 989 F.2d 1450 (6th Cir.1993), the Sixth Circuit held that in light of *Miles,* the unavailability of punitive damages under the Jones Act compelled the conclusion that punitive damages are similarly unavailable in a general maritime law unseaworthiness action for the wrongful death of a seaman. *Id.* at 1459. Although *Miller* involved a seaman, the court opined on the history of damages available to others under general maritime law, including longshore workers. Discussing the developments since 1972, the court observed that *Gaudet* "has been limited over the years to the point that it is virtually meaningless", "condemned to a kind of legal limbo: limited to its facts, inapplicable on its facts, yet not overruled." *Id.* at 1458–59.

In *Smith v. Trinidad Corp.,* 992 F.2d 996 (9th Cir.1993), this Circuit found that under *Miles* there is no longer a right of recovery for loss of society and loss of consortium under either the Jones Act or general admiralty law. *Id.* at 996. The opinion is a short *per curiam* opinion, however, and the case involved the wife of an injured seaman, not a longshore worker. *Smith* is thus not definitive on the issue before this court. Furthermore, in support of its holding, the Ninth Circuit cited only to a Fifth Circuit opinion on the same question, *Murray v. Anthony J. Bertucci Constr. Co.,* 958 F.2d 127 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992). In *Murray,* the Fifth Circuit recognized the anomalous results arising from *Gaudet* and *Miles* but apparently saw no reason to rationalize them since it was dealing with a seaman and *Miles* was unequivocal in its holding.

Other post-*Miles* cases are not particularly helpful. In one line of cases, courts have determined that *Miles* does not apply when Jones Act seamen or their dependents bring an action for non-pecuniary damages against third parties under the general maritime law, not against the employer under the Jones Act. *See, e.g., Mussa v. Cleveland Tankers,* 802 F.Supp. 84, 86 (E.D.Mich.1992) (punitive damages recoverable); *Sugden v. Puget Sound Tug &. Barge Co.,* 796 F.Supp. 455, 456–57 (W.D.Wash.1992) (loss of society damages recoverable because same damages re-

coverable by survivor of longshore worker); *Rebstock v. Sonat Offshore Drilling,* 764 F.Supp. 75, 76 (E.D.La.1991) (loss of consortium and society recoverable). All of these courts concluded that when a Jones Act seaman brings suit under a single general maritime claim of unseaworthiness, the principles the Supreme Court announced in *Gaudet,* and not in *Miles,* control. *See Sugden,* 796 F.Supp. at 457. However, it is important to note that, unlike longshore workers who are governed by section 905(b), Jones Act seamen are not limited by statute in their actions against third parties.

Many of these cases assume, without distinguishing between negligence under the LHWCA and unseaworthiness under *Gaudet,* that *Gaudet* is still good law for longshore workers injured or killed in territorial waters. *See Nichols v. Petroleum Helicopters, Inc.,* 995 F.2d 82, 85 (5th Cir.1993) (action involving longshore worker in crash beyond territorial waters stating in dictum "[a]fter *Miles,* longshoremen can recover for loss of consortium only if injured in territorial waters"); *Ferrara v. Fukuoka Senpaku,* 1991 A.M.C. 2249, 1991 WL 50040 (D.Mass.1991) (wife of an injured longshore worker who brings an action under section 5(b) of the LHWCA may still recover non-pecuniary, loss of consortium damages); *Garner v. Dravo Basic Materials Co.,* 768 F.Supp. 192 (S.D.W.Va.1991) (permitting the estate of a non-seaman killed in territorial waters to recover lost future earnings in a general maritime wrongful death action; however, the deceased was not a longshore worker and the action was not brought under the LHWCA).

In cases specifically dealing with longshore workers some courts have flatly stated without explanation that *Miles* did not overrule *Gaudet. See, e.g., Walker v. Armogene Braus,* 1992 WL 115977 at *4, 1992 U.S.Dist. LEXIS 7136, at *8 (E.D.La.1992); *Randall v. Chevron U.S.A., Inc.,* 1992 A.M.C. 1583, 1992 WL 25707 (E.D.La.1992). However, other courts have found without extensive discussion that as a result of *Miles* the spouse of a longshore worker cannot assert claims for loss of society or loss of consortium under the LHWCA. *See Hollie v. Con-*

*solidated Natural Gas Service Co.,* 1993 WL 22191, 1993 U.S.Dist. LEXIS 870 (E.D.La. 1993); *Means v. Tidewater Grand Isle, Inc.,* 1993 WL 149073, 1993 U.S.Dist. LEXIS 6036 (E.D.La.1993); *Boudreaux v. Penrod Drilling Corp.,* 1992 WL 245948, 1992 U.S.Dist. LEXIS 14390 (E.D.La.1992).

In *Cater v. Placid Oil Co.,* 760 F.Supp. 568 (E.D.La.1991), the court found that *Alvez* and *Gaudet* were eroded by *Miles* and no longer afforded "any authority for spousal recovery of loss of society under general maritime law in cases involving ... Jones Act seamen." *Id.* at 571. While it is clear that *Cater* was only addressing Jones Act seamen, the court's broad statements regarding the demise of *Gaudet* are equally applicable to longshore workers, for it reads *Miles* as eliminating all damages for loss of society under general maritime law.

This court finds that the better approach to determining damages under the LHWCA is to maintain a clear distinction between the negligence and unseaworthiness doctrines that have developed separately in maritime law. The former is a creature of statute rejected by the Supreme Court in *The Osceola* and created by Congress in the Jones Act, DOHSA, and the LHWCA. The latter is a creature of the courts incipient in *The Osceola* and developed by case law including the decision in *Moragne.* Congress explicitly rejected unseaworthiness as a basis for longshore workers' claims even against third party vessels. It did so at a time predating the development of non-pecuniary damages. Therefore, it could not have anticipated that it was engrafting non-pecuniary damages onto the LHWCA, especially when it was expressly excluding the very theory of recovery that later gave rise to this form of damages.

In light of these distinct lines of remedies, the purpose of the LHWCA amendments of 1972 and the Supreme Court's clear language in *Miles,* this court holds that *Gaudet* damages are no longer recoverable by the survivors of longshore workers injured or killed in territorial waters.[7]

---

7. Of course, Jones Act and unseaworthiness remedies still apply to longshore workers serving

■ It is now necessary to determine what wrongful death damages *are* recoverable under the LHWCA, which is silent in this respect. The language of the Act clearly contemplates wrongful death recovery. *See* 33 U.S.C. §§ 905(a), (b) (referring to rights of dependents, next of kin, etc.). Congress provided further guidance, advising that

vessels [would be placed] in the same position, insofar as third-party liability is concerned, as land-based third parties in nonmaritime pursuits.

The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action....

1972 U.S.C.C.A.N. at 4703. In the next paragraph the Committee specifically referred to damages, indicating that persons having the right to recover damages under the Act "retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness." *Id.*

It can be argued that to fill in the interstices of the Act's damage provisions courts should look to related maritime law governing seamen. This would operate to limit damages to those permitted in *Miles* and its progeny, and would provide more uniformity in recoveries for longshore workers and seamen. Some solace for this position can be found in the legislative history of the amendments. The Committee Report states that it is not the intent of the legislation that "the negligence remedy ... be applied differently in different ports depending on the law of the State in which the port may be located." *Id.* at 4705. In that context the Report only refers to questions of liability suggesting a

concern that vessels not be subjected to different standards of care. However, Congress also indicated in the legislative history that the circumstances of the occupations of longshore workers and seamen were distinct and deliberately placed them on different footings. That portion of the legislative history dealing with compensation emphasizes placing longshore workers on the same footing as land-based employees, not seamen. Therefore, to read seamen's cases into the LHWCA would misread congressional intent.

It also is argued by plaintiffs that nonpecuniary damages should be read into LHWCA. However, as explained above the authority for this after *Miles* is unpersuasive. And, whether treated as *Gaudet* damages or creation of damages for the purpose of the Act, this position results in the same anomalous situation—the survivors of longshore workers injured in territorial waters would be entitled to greater damages than those of seamen and even those of longshore workers injured on the high seas.

It is clear from the legislative history of the Act that Congress contemplated not only eliminating the unseaworthiness theory of liability, but also all of its vestiges, including damages. This is also consistent with the nature of the Act, which is primarily a workers' compensation style statute. Its focus is on compensation to the injured longshore worker and his dependents for work-related injuries. However, like land-based workers' compensation statutes, it permits actions against third parties.

This approach is not without its perils. This Circuit, like the Supreme Court, has been concerned with the need for uniformity in maritime law. For this reason in a negligence-based wrongful death action brought under the Suits in Admiralty Act, 46 U.S.C.App. § 742, the court extended *Moragne* "to the exclusion of state wrongful death statutes". *Nelson v. United States,*

aboard vessels in the capacity of seamen, often referred to as "Jones Act seamen." *See Southwest Marine, Inc. v. Gizoni,* —— U.S. ——, ——–——, ——, 112 S.Ct. 486, 491–492, 494, 116 L.Ed.2d 405 (1991). In addition, longshore workers working on board vessels on the high seas are covered by DOHSA. *See* 46 U.S.C.App. § 761 (providing coverage to any person injured or killed on the high

seas, not solely seamen); *see also Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The court recognizes that these circumstances also create anomalous results, but such results are created by statute, and it is up to Congress, not the courts, to rewrite the statutes if complete harmony is desired.

639 F.2d 469, 473 (9th Cir.1980). The Ninth Circuit reaffirmed this reasoning in *Nygaard v. Peter Pan Seafoods Inc.*, 701 F.2d 77, 80 (9th Cir.1983). However, these actions did not involve longshore workers and they were decided before *Miles*. *Nygaard* was a DOHSA case and *Nelson* was based on general maritime law, a theory of recovery for longshore workers rejected by Congress in its 1972 amendments.

These calls for uniformity are not compelling in the face of a statute that is not based on general maritime law and where general maritime law claims no longer exist, particularly when Congress has indicated that recovery of damages against a vessel should be similar to that obtained in non-maritime employment. *See* 1972 U.S.C.C.A.N. at 4703. In addition, this Circuit has recognized that uniformity does not preclude application of state law in appropriate maritime or maritime-related cases. *See Pacific Merchant Shipping Assoc. v. Aubry*, 918 F.2d 1409, 1425 (9th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992).

Looking to land-based remedies for third party claims, as Congress suggests, requires the court to look to applicable state law. Nearly every state has wrongful death statutes which include remedies for survivors of covered employees against third parties. Although the configuration of damages may look little different from damages available under *Gaudet*, it must be emphasized that these are not *Gaudet* damages. They are not based on the doctrine of unseaworthiness, but on statutory negligence. Consonant with the intent of Congress they are based on state law. While this may lead to inconsistencies in damages, it is clear that Congress was aware of this and desired to treat longshore workers working aboard vessels as more comparable to land-based workers than to seamen. 1972 U.S.C.C.A.N. at 4703.[8]

Accordingly, to determine the remedies available to plaintiffs under the LHWCA, this court must look to the most analogous land-based statutory scheme, in this case California workers' compensation provisions providing a cause of action for plaintiffs against third party (non-employer) tortfeasors.

## II. *Damages Available Under California Law*

■ Under California workers' compensation law, notwithstanding any suit against the employer, an employee (or his estate) has a "right of action for all damages proximately resulting from the injury or death against any person other than the employer." Cal.Labor Code § 3852; *see also County of San Diego v. Sanfax Corp.*, 19 Cal.3d 862, 140 Cal.Rptr. 638, 568 P.2d 363 (1977) (discussing the section 3852 statutory scheme). Thus, based on section 3852 plaintiffs in this action are entitled to "all damages proximately resulting from the ... death" of Lloyd Smallwood. To determine what those damages entail, recourse must be had to California's wrongful death statute.

California statutory law provides "[a] cause of action for the death of a person caused by the wrongful act or neglect of another," Cal. Code Civ.Proc. § 377.60, and provides further that "damages may be awarded that, under all circumstances of the case, may be just...." *Id.* § 377.61. Interpreting this statute, California courts have set forth rules governing what specific damages are recoverable under this statute.[9]

Pecuniary damages have always been recoverable under the wrongful death statute, based on the fact that the original 1862 statute specifically limited recovery to such damages. *See Krouse v. Graham*, 19 Cal.3d 59, 67, 137 Cal.Rptr. 863, 562 P.2d 1022 (1977) (tracing the history of wrongful death damages). The measure of these pecuniary dam-

---

8. " 'Tis said, fantastic ocean does enfold/The likeness of whate'er on land is seen." William Wordsworth, "Fishwomen—On Landing at Calais" (1821).

9. Sections 377.60 and 377.61 were adopted in 1992 to replace former section 377, and all of the case law on damages developed under section

377. However, the court has found no case law suggesting that the damages analysis under the old section has been meaningfully altered by the new sections, and, as there appears to be no reason to doubt the continuing vitality of that case law, the court adopts it as controlling.

ages is the financial benefits the survivors were receiving from the decedent at the time of death and those reasonably to be expected in the future. *See Cervantes v. Maco Gas Co.,* 177 Cal.App.2d 246, 251, 2 Cal.Rptr. 75 (1960).

In addition to purely pecuniary loss, California courts have provided for recovery of non-pecuniary damages. Such damages include "loss of the society, comfort, care and protection afforded by the decedent." *Krouse,* 19 Cal.3d at 67, 137 Cal.Rptr. 863, 562 P.2d 1022; *see also Ledger v. Tippitt,* 164 Cal.App.3d 625, 631–32, 210 Cal.Rptr. 814 (1985) (surviving spouse can recover for loss of decedent's "love, companionship, comfort, affection, society, solace or moral support, loss of enjoyment of sexual relations, [and] loss of physical assistance in the operation or maintenance of the home"). However, though labeled non-pecuniary, these losses must be reduced to a present economic value. *See Fox v. Pacific Southwest Airlines,* 133 Cal.App.3d 565, 569, 184 Cal.Rptr. 87 (1982); *see also In re Air Crash Disaster Near Cerritos, Cal.,* 982 F.2d 1271, 1278 (9th Cir. 1992).

While non-pecuniary damages are recoverable, damages for mental and emotional distress, including grief and sorrow, are not, *see Krouse,* 19 Cal.3d at 69, 137 Cal.Rptr. 863, 562 P.2d 1022; *Ledger,* 164 Cal.App.3d at 632, 210 Cal.Rptr. 814, and California courts have consistently refused to allow for recovery of punitive or exemplary damages. *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 450, 131 Cal.Rptr. 14, 551 P.2d 334 (1976); *In re San Juan Dupont Plaza Hotel Fire Litigation,* 745 F.Supp. 79, 84 (D.Puerto Rico 1990).

Under California law, therefore, plaintiffs are entitled to recover all pecuniary and non-pecuniary damages that were the proximate result of Mr. Smallwood's death.

*CONCLUSION*

It is undisputed that Mr. Smallwood was a harbor worker who died while working on a vessel within California's territorial waters. His alleged dependents have brought this wrongful death and survival action under the general maritime law and section 5(b) of the LHWCA, 33 U.S.C. § 905(b). For all the foregoing reasons, the court concludes that plaintiffs do not have claims under general maritime law and non-pecuniary damages under such theories are not recoverable. However, plaintiffs are entitled to damages under the LHWCA and these damages, based on California law, include all pecuniary and non-pecuniary damages proximately caused by Mr. Smallwood's death, as reduced to present economic value. Accordingly, defendant's motion in limine is DENIED.

IT IS SO ORDERED.