**Doris SMALLWOOD and Marla Gladney–Smallwood, individually and as Joint Personal Representatives of the Estate of Lloyd C. Smallwood, Deceased, Plaintiffs,**

·v.

**AMERICAN TRADING & TRANSPORTATION CO., Defendant.**

**No. C–92–0869 MHP.**

United States District Court, N.D. California.

Nov. 4, 1994.

As Amended Jan. 6, 1995.

John F. Penrose, Schachter Kristoff Orenstein & Berkowitz, John R. Hillsman, McGuinn Hillsman & Palefsky, San Francisco, CA, for Doris Smallwood, Marla Gladney–Smallwood.

Frederick W. Wentker, Jr., David W. Condeff, Brian Dalrymple, Lillick & Charles, San Francisco, CA, for American Trading & Transp. Co.

Stanley L. Gibson, Caryn Bortnick, Neil E. Olson, Derby Cook Quinby & Tweedt, San Francisco, CA, for Pacific Chemical Lab.

Frank B. Hugg, Jeanne M. Bates, San Francisco, CA, for Legion Ins. Co.

## OPINION

PATEL, District Judge.

Plaintiffs Doris Smallwood and Marla Gladney–Smallwood, dependents of Lloyd Smallwood, brought this maritime wrongful death action pursuant to section 5(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), on behalf of themselves and as representatives of the estate of Lloyd Smallwood against defendant American Trading & Transportation Co. ("ATTRANSCO").

The matter is currently before the court on cross-motions for partial summary judgment by ATTRANSCO and Marla Gladney–Smallwood on the limited issue of whether Marla Gladney–Smallwood's children have standing to bring this action. Having considered the parties' submissions and arguments the court enters the following opinion.

## BACKGROUND

The undisputed facts relevant to this motion can be briefly summarized.[1]

Lloyd Smallwood burned to death on July 18, 1991 when sparks from welding he was performing on an ATTRANSCO vessel (the American Trader) ignited a pressurized oil line. Mr. Smallwood married Doris Howell on January 17, 1970. Lloyd and Doris Smallwood had two children together: Alycyn, born 10/1/70, and Lloydene, born 11/5/71. Lloyd and Doris never divorced, though they separated in June 1972 and did not live together thereafter. Lloyd moved to California in 1982, while Doris and the children stayed in Pennsylvania. Except for occasional gifts, Lloyd did not contribute to the support of these children after 1982.

Marla Rae Tigner married Otis Gladney in 1975, and they remained married through the time of Lloyd Smallwood's death. They had

three children together: Tia Gladney, born 8/14/77, Terrence Gladney, born 6/24/79, and Brandon Gladney, born 11/17/81 [hereinafter "the Gladney children"]. Otis Gladney has not contributed to the support of his children since 1985.

Marla Gladney and Lloyd Smallwood met in California in 1987. Sometime in 1988, Marla, the Gladney children, and Lloyd began to live together, and they continued to do so through the time of Lloyd's death. During this period, LLoyd and Marla deposited their earnings and other money in jointly held bank accounts, and drew from those accounts to pay for the necessities of life for themselves and the Gladney children. Lloyd never adopted the three Gladney children, and never filed any application to do so. However, Marla Gladney represented herself as Lloyd's wife on insurance forms, and Lloyd was listed as Terrence Gladney's parent/guardian on his 1991–92 school registration form. In addition, Lloyd listed the Gladney children as dependent stepchildren on various state and federal tax forms. Finally, one month before his death, Lloyd petitioned in Alameda County Superior Court to be declared guardian ad litem for the Gladney children with respect to a claim they had against Safeway, on the basis that he was their custodial parent and/or legal guardian.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted:

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial … since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and

---

1. All facts in this section are derived from the two Joint Statements of Undisputed Facts sub-

mitted by the parties.

identifying those portions" of the record showing the absence of a genuine issue of fact. *Id.* at 323, 106 S.Ct. at 2552–53. The burden then shifts to the nonmoving party to present evidence sufficient to support a verdict in its favor on every element of its claim for which it will carry the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. at 2552–53. "If the [nonmoving party's] evidence is ... not sufficiently probative ... summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The court's function on a motion for summary judgment is not to make credibility determinations, *id.* at 249, 106 S.Ct. at 2510–11, and the inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987).

*DISCUSSION*

The sole issue before the court on this motion is whether the Gladney children have standing to bring this wrongful death action.[2] Marla Gladney contends that the Gladney children have standing to pursue this action, while ATTRANSCO argues that they lack standing to do so as a matter of law.

■ Both parties start their analysis with *Moragne v. State Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), in which the Supreme Court adopted a wrongful death remedy for longshore workers under general maritime law based on unseaworthiness. However, as this court has previously noted, the unseaworthiness cause of action for longshore workers adopted in *Moragne* was abrogated by Congress in its 1972 amendments to the LHWCA, so that such workers now are limited to a negligence cause of action. *See Smallwood v. American Trading & Transp. Co.,* 839 F.Supp. 1377, 1383 (N.D.Cal.1993) ("*Smallwood I*"). In *Smallwood I* this court ruled, and it reaffirms today, that proper analysis of plaintiffs' section 905(b) wrongful death cause of action requires resort to the most nearly analogous state cause of action, California's third-party

wrongful death statutes, as found in California Code of Civil Procedure §§ 377.60 *et seq.* and California Labor Code § 3852. *Id.* at 1387. *Smallwood I* analyzed at length the history leading up to the current provisions of the LHWCA and concluded that the state wrongful death statutes provided the applicable rule of decision for determining what damages are recoverable. *Id.* For the same reasons articulated there, the court finds that California's wrongful death statutory scheme provides the rule of decision for determining standing under section 905(b). *Accord Tidewater Marine Towing v. Curran–Houston, Inc.,* 785 F.2d 1317, 1319 (5th Cir.1986) (holding that to determine whether a plaintiff has standing to assert a section 905(b) cause of action, the court must look to the analogous state law cause of action).

California law is quite specific on the classes of people who have standing to assert a cause of action for wrongful death:

A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:

(a) The decedent's surviving spouse, children, and issue of deceased children, or, if none, the persons who would be entitled to the property of the decedent by intestate succession.

(b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents. As used in this subdivision, "putative spouse" means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

(c) A minor, whether or not qualified under subdivision (a) or (b), if, at the time of the decedent's death, the minor resided for the previous 180 days in the decedent's household and was dependent on the dece-

---

**2.** Marla Gladney–Smallwood apparently now concedes that she lacks standing to do so, and seeks only to vindicate the standing of her children by this motion. *See* Plaintiff's Memorandum of P & A, at 4.

dent for one-half or more of the minor's support.

Cal.Code Civ.Proc. § 377.60. It is readily apparent that the only section 377.60 class within which the Gladney children possibly could fit is the last class—as minor children who resided in Lloyd Smallwood's residence for the 180 days preceding his death who were dependent on him for one-half or more of their support.[3]

ATTRANSCO contends that there is no evidence in the record that the Gladney children received one-half or more of their financial support from Lloyd Smallwood during the 180 days preceding his death. Indeed, ATTRANSCO alleges that the Gladneys have purposefully evaded discovery requests aimed at determining the exact amount of support Lloyd provided precisely because the evidence would show that he provided less than the statutorily required amount. AT-TRANSCO submits its own evidence in the form of calculations by its putative expert, who concludes that based on the work performed by Lloyd and Marla during the relevant period, the *most* Lloyd could have contributed was roughly one-quarter of all expenses. *See* Declaration of Jerald Udinsky.

The Gladneys make no attempt to refute these figures. Indeed, at the hearing on this matter they conceded that Lloyd did not provide one-half or more of the children's financial support. Rather, they argue that they have standing based on the general policy goal underlying the maritime wrongful death cause of action—compensation for dependents—coupled with the more generous standing provisions in other statutes and the undisputed fact that Lloyd Smallwood treated the Gladney children much as his own children and apparently considered adopting them.

The Gladneys' attempt to avoid the obvious result of application of the California wrongful death standing provisions must fail. While it is true that the purpose of the maritime wrongful death cause of action is to insure that actual dependents are provided for in the event of a longshore worker's death or injury, it is also true that the specific definition of dependents spelled out under California wrongful death law controls, not the more generous definitions found elsewhere. *See Tidewater,* 785 F.2d at 1319 ("state law provides the rule for decision of the status issue . . . ."). Thus, while the Gladneys are correct that in order to assert an LHWCA claim for benefits against an employer, minor claimants need only be children "in relation to whom the deceased employee stood *in loco parentis* for at least one year prior to the time of injury," 33 U.S.C. § 902(14), that provision applies *only* to claims against the employer—it cannot be grafted on to the maritime negligence cause of action in section 905(b) and thereby displace the more limited definition found in state law.

The Gladney children's argument that they meet the definition of children under California probate law for purposes of intestate succession is equally misplaced. Under California's wrongful death statute, probate law becomes relevant only if the decedent is not survived by a wife or children, *see* Cal.Code Civ.Proc. § 377.60(a), and Lloyd Smallwood was in fact survived by his wife, Doris, and their two children. Thus, the probate code is simply inapposite to this action.[4] *See Lewis v. Regional Center of the East Bay,* 174

---

3. It is undisputed that Marla Gladney and her children were not Lloyd Smallwood's surviving spouse and children within the meaning of subsection (a)—that role is filled by Doris Smallwood and her two children (and there is therefore no issue of intestate succession). Furthermore, the Gladney children do not qualify under subsection (b). Marla Gladney was not a "surviving spouse of a void or voidable marriage," a classification which has a limited, technical meaning under California law which does not cover Marla Gladney, and the Gladney children do not qualify as stepchildren because Marla and Lloyd were never married.

4. Furthermore, even if the code were relevant, by its very terms it would not cover the Gladney children. The Gladneys cite section 6454 of the probate code; however, that section covers only circumstances involving foster parents and stepparents, *see* Cal.Probate Code § 6454(b), and Lloyd Smallwood was neither. The Gladneys do not dispute that Lloyd was not a stepparent, and their argument that Lloyd was a foster parent is belied by the technical meaning of that term under California law and statutorily mandated requirements, including licensing. *See* Cal. Health & Safety Code § 1500 *et seq.*.

Cal.App.3d 350, 354–55, 220 Cal.Rptr. 89 (1985) (holding that the probate code does not determine standing for purposes of the wrongful death cause of action).

■ The Gladneys also argue that the facts of this case establish an equitable adoption within the meaning of California case law. California courts have created a doctrine of equitable adoption to enforce "a contract by a person to adopt the child of another as his own, [where] accompanied by a virtual, although not statutory adoption...." *Estate of Wilson,* 111 Cal.App.3d 242, 246, 168 Cal.Rptr. 533 (1980). However, that same case explains the extremely limited function of equitable adoption—it serves *only* to vindicate the right of a child to enforce a contract to inherit, it does *not* thereby transform the legal status of the child or invest that child with the same legal rights held by statutorily adopted children, and it cannot be used to broaden statutory classes. *Id.* at 246, 168 Cal.Rptr. 533. Thus, even assuming arguendo that the Gladney children qualify for equitable adoption, such a determination has absolutely no bearing on their standing to sue for wrongful death.

■ While the Gladneys' argument that they should have standing to assert a claim for wrongful death based on their close, familial relationship with Lloyd Smallwood certainly has strong emotional appeal, and may, indeed, represent a laudable policy goal, it is simply not correct under existing law. The law is clear: in order to determine standing, resort must be had to California wrongful death law; under California law, unrelated children who lived with the decedent have standing to assert a wrongful death claim *only* if they received one-half or more of their financial support for the previous 180 days. The Gladneys having conceded that such was not the case, ATTRANSCO is entitled to summary judgment that the Gladney children lack standing to assert a claim as a matter of law.

*CONCLUSION*

For the foregoing reasons, defendant's motion for summary judgment is hereby GRANTED, and plaintiff's cross-motion for partial summary judgment is hereby DENIED.

IT IS SO ORDERED.